STATE of Missouri, Appellant,

v.

Gary L. MEYERS, Defendant.

No. 75130.

Missouri Court of Appeals,
Eastern District,
Writ Division Three.

March 30, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 5, 1999.

Application to Transfer Denied
June 29, 1999.

Jules V. De Coster, Pros. Atty., Monticello, for appellant.

Judith K. Offermann, Hannibal, for respondent.

PUDLOWSKI, Presiding Judge.

The State appeals from the trial court's ruling granting Gary L. Meyers' (Defendant) motion to suppress evidence in which Defendant challenged the constitutional validity of the search warrant issued for his home. The trial judge found no probable cause for the issuance of the search warrant nor were there circumstances to trigger the good faith exception. The State filed its interlocutory appeal pursuant to Section 547.200 RSMo (1994). Upon review of the record, we reverse the decision of the trial court.

 "In reviewing a motion to suppress based upon an insufficient warrant, this court gives great deference to the initial judicial determination of probable cause made at the time of the issuance of the warrant, and reverses only if that determination is clearly erroneous." *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990). We look to the four corners of the affidavits for support of the warrant. *State v. Bowen*, 927 S.W.2d 463, 465 (Mo.App. W.D.1996)

We begin our review by looking at the evidence presented to the judge who issued the search warrant. On the morning of 3 June 1998, the prosecuting attorney for Lewis County presented the Honorable Fred Westhoff, Judge of the Associate Division of the Circuit Court, with five affidavits attached to his application for a search warrant.

In the first affidavit, Deputy Sheriff Terry Bowen (Bowen) stated he received a telephone call on 2 June 1998 at 4:24 p.m. regarding the possibility of a methamphetamine (meth) lab. The unidentified informant smelled a strong ether odor, saw two twenty pound tanks with lights in the yard, observed vehicle activity at night and a person standing at the house's gate. The unidentified informant also provided a license plate number from one vehicle. He further stated that the driver of that specific vehicle was about 45 years old, six feet tall, had light brown hair and weighed 180 pounds.

Bowen verified the license plate number. He identified the owner as a woman who lived in Marion County. Bowen contacted a Marion County deputy and asked about the reputation of the owner. The deputy stated he did not know her, but knew her boyfriend, who allegedly is involved in meth production in Marion County. The boyfriend fit the description given by the unidentified informant.

Sergeant Doug Rader (Rader) provided the second affidavit dated 2 June 1997, but notarized on 2 June 1998. He stated that on 2 June 1997, he received information from a man identified as an investigator for the Illinois Task Force. The investigator told Rader that another person told the investigator that Defendant was manufacturing meth. The investigator stated that he had information regarding past criminal conduct of six other individuals who have visited the residence. Rader stated that over the previous two years, he received information about the manufacturing of meth at that residence.

Labelle Police Officer Gary Grubb (Grubb) provided an affidavit stating he received a telephone call from a confidential informant on 25 May 1998. The confidential informant informed him that a person named Brian Moss and "a Herbeck subject" were involved in the manufacturing of meth just off blacktop C, north of LaGrange. On 29 May 1998, Grubb further stated he received another telephone call from a confidential informant who smelled ether at the former residence of Bill Eaton. The location of the residence identified in these telephone calls was consistent with the location of defendant's residence.

The affidavit of LaGrange Police Officer Mike Baker (Baker) stated that on 2 June at 10:30 p.m., he and another officer drove by the residence and smelled a strong ether odor. He believed that the ether odor emanated "from the area of the residence or of the property." The odor was so strong it caused a burning sensation in Baker's throat. Through an open window, the officers observed two white men playing pool inside of the residence.

Bringer's affidavit not only summarized the other officers' information, but included information he received from a confidential informant who stated that he had been in the area of defendant's residence and noticed a strong odor of ether. Furthermore, on 2 June 1998, as Bringer and Baker drove past the "immediate vicinity of [defendant's] residence . . . the ether was strong enough it made [Bringer's] eyes water momentarily."

Finally, in his affidavit Rader recited that he was "very familiar with the process used in the manufacturing methamphetamine [sic] and I am certified with the Drug Enforcement Administration in the handling of methamphetamine labs." Grubb recited that he had "worked law enforcement for fourteen years." Bringer recited in his affidavit that "[e]ther can be used in the manufacture of methamphetamine."

■ The Fourth Amendment guarantees that "no warrant shall issue but upon probable cause." As the existence of probable cause in a particular case is a question of fact, appellate review is not *de novo*. *State v. Berry*, 801 S.W.2d 64, 66 (Mo. banc 1990). We give great deference on review to the initial determination of probable cause made at the time of the issuance of the warrant and we reverse only if that determination is clearly erroneous. *Id.* Probable cause is "a fair probability that contraband or evidence of a crime will be found." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)). Probable cause does not demand any showing that such belief be correct or more likely true than false. *Id.* Personal knowledge of the informant corroborated through other sources is enough to establish probable cause. *Id.* Probable cause is to be determined in each case by looking at the totality of the circumstances surrounding the warrant. *State v. Miller*, 815 S.W.2d 28, 31–2 (Mo. App.1991).

■ We reviewed the affidavits before the magistrate and they reflect that one informant lived "near" defendant's residence and noted the strong odor of ether, two twenty-pound tanks, vehicles at all hours of the night and a guard at the gate. Additionally, this informant reported the license plate of a vehicle and the description of its driver. Another informant reported that defendant was manufacturing methamphetamine at his residence and also identified six persons known to frequent defendant's residence who were involved in the manufacture of methamphetamine. This information indicated personal knowledge of the informant. *See Berry*, 801 S.W.2d at 64. Various informants had told Rader over the past two years that methamphetamine was manufactured at defendant's residence. Another informant related that two persons were manufacturing methamphetamine "just off blacktop C." As Grubb's affidavit disclosed, this roughly describes defendant's residence. Two other informants detected that the strong odor of ether emanated from defendant's residence and property.

This information was further corroborated by independent police work. Bowen matched the description of the driver of a vehicle to that of the owner's boyfriend. This man was known to be involved in the manufacture of methamphetamine in Marion County. Chief Baker and Sheriff Bringer drove past defendant's residence and confirmed the presence of ether in the area of defendant's "residence or of the property." The odor of ether was so in-

tense that it caused Baker's throat to burn and Bringer's eyes to water.

■ It is enough, for purposes of assessing probable cause, that "[c]orroboration through other sources of information reduced the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the hearsay." *State v. Bible*, 750 S.W.2d 676, 680 (Mo.Ap.. E.D. 1988) (quoting *Gates*, 462 U.S. at 244–5, 103 S.Ct. at 2335, 76 L.Ed.2d at 552)(internal quotations omitted). "Corroboration of *part* of the information furnished by the informant is sufficient to support a finding of probable cause to issue a search warrant." *State v. Thomas*, 737 S.W.2d 247, 249 (Mo.App.1987)(emphasis theirs). All the information obtained by the officers was consistent with that supplied by the informants, thereby reducing the chance that the informants were not telling the truth. *Vega*, 875 S.W.2d at 218. Additionally, as Justice Harlan has expressed,

> [t]he ordinary citizen who has never before reported a crime to the police may, in fact, be more reliable than one who supplies information on a regular basis. "The latter is likely to be someone who is himself involved in criminal activity or is, at least, someone who enjoys the confidence of criminals."

*State v. Dudley*, 819 S.W.2d 51, 54 (Mo.App.1991)(quoting *United States v. Harris*, 403 U.S. 573, 599, 91 S.Ct. 2075, 2089, 29 L.Ed.2d 723, 743 (1971)).

The affidavits were corroborated by the informants' statements and independent police work. There was sufficient corroboration to credit the hearsay statements contained in the affidavits. From these facts, a neutral and detached magistrate could have concluded from the totality of the circumstances that there existed a fair probability that contraband or evidence of a crime would be found at defendant's residence.

The trial court erred in sustaining defendant's motion to suppress evidence on the basis that the search warrant was issued without probable cause. We hold that the affidavits stated sufficient probable cause to support the issuance of the search warrant. The decision of the trial court is reversed and remanded for further proceedings.

KATHIANNE KNAUP CRANE, Judge, and CLIFFORD H. AHRENS, Judge, CONCUR.