**STATE of Missouri, Respondent,**

v.

**John Cecil ROWLAND, Appellant.**

No. 24273.

Missouri Court of Appeals,
Southern District,
Division One.

March 28, 2002.

Motion for Rehearing or Transfer Denied
April 9, 2002.

Application for Transfer Denied
May 28, 2002.

Ellen H. Flottman, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Audara L. Charlton, Asst. Atty. Gen., Jefferson City, for Respondent.

ROBERT S. BARNEY, Chief Judge.

Following a bench trial in the Circuit Court of Greene County, John Cecil Rowland (Defendant) was convicted of possession of a controlled substance with intent to distribute, § 195.211 RSMo.2000. Defendant was sentenced to imprisonment for

a term of thirteen years. He appeals his conviction and sentence.

■■■ As more fully explained, *infra*, Defendant raises two points on appeal. Both points allege the trial court erred in overruling Defendant's motions to suppress evidence. "The State has the burden of showing by a preponderance of the evidence that a motion to suppress should be denied." *State v. Wells*, 33 S.W.3d 202, 205 (Mo.App.2000); *State v. Franklin*, 841 S.W.2d 639, 644 (Mo. banc 1992). " 'In reviewing the trial court's denial of a motion to suppress, we do not substitute our discretion for that of the trial court and determine only whether there was sufficient evidence to support the trial court's ruling.' " *State v. Peterson*, 964 S.W.2d 854, 856 (Mo.App.1998) (quoting *State v. Bunts*, 867 S.W.2d 277, 278 (Mo.App. 1993)). " 'The trial court's ruling on a motion to suppress is reversed only if it is clearly erroneous. The trial court's ruling is clearly erroneous if we are left with a definite and firm belief a mistake has been made.' " *State v. Tackett*, 12 S.W.3d 332, 336 (Mo.App.2000) (quoting *State v. Leavitt*, 993 S.W.2d 557, 560 (Mo.App.1999)). This Court will view all evidence and any reasonable inferences therefrom in the light most favorable to the ruling of the trial court. *Id.* "We defer to the trial court's evaluation of the credibility of the witnesses and the weight of the evidence." *Wells*, 33 S.W.3d at 205; *State v. Villa–Perez*, 835 S.W.2d 897, 902 (Mo. banc 1992).

The facts most favorable to the verdict are as follows: On November 18, 1999, Springfield police officers responded to a call at the Interstate Inn. Hotel management had called the police after smelling ether emanating from one of the hotel rooms. The room was located on the sec-

ond story of a three-story building, with rooms on either side. Five officers approached the room from its outside entry. The officers smelled the odor of ether coming from the room as they came near the door. The officers knocked on the door and the occupant, Defendant, opened the door after a short delay. The door opened into the room and Defendant started to step out of the room. Once he recognized the police officers, Defendant started to go back inside and tried shutting the door. Police officers attempted to stop Defendant from re-entering the room and one officer grabbed Defendant and pulled him out of the room. Defendant resisted and tried unsuccessfully to pull away from the officer. Other officers assisted in pulling Defendant out of the room and laid him on the walkway floor and handcuffed him.

Once the hotel room door was opened, the odor of ether became stronger, indicating to the police that the room was the source of the smell. The officers entered the room to see if any other people were present. They testified that the smell created a safety issue as someone could have been passed out inside. There was no one else in the room. One officer testified that the smell of ether was so strong he was getting a headache from being in the room only a few seconds.

The police testified they were only in the hotel room for a few seconds to look for unconscious people and discover the source of the odor. During their cursory sweep of the room they found coffee filters on a cabinet containing a white powdery substance in plain view.[1] There were also cut corners of plastic baggies situated about the room.

Officers left the door open to allow the fumes to dissipate and contacted the Narcotics Enforcement Team, which was

---

1. It was later determined that the white powdery substance was methamphetamine.

trained in handling hazardous materials. They secured the room and waited for officers from the narcotics unit to arrive. The officers did not obtain a search warrant to search the hotel room prior to a search of the room.

The Narcotics Enforcement Team arrived, searched the room and seized evidence. On a desktop, officers noticed scales, jars, coffee filters, fake shaving cream can, and plastic baggies. On a table, officers found a marijuana pipe, a hand-held scale, and a Sony case containing syringes. Officers also found a jar inside the room's refrigerator with an oily substance on top and a milky-clay looking substance on the bottom, and located rock salt and drain opener in a toolbox. An officer with the Narcotics Enforcement Team testified at trial that, based on his training and experience, all of the above items are commonly used in the manufacture of methamphetamine.

In his first point on appeal, Defendant asserts that the trial court erred in overruling his motion to suppress the methamphetamine found in the coffee filters in the hotel room and admitting the methamphetamine into evidence at trial over his objection because there was not probable cause to arrest him or any true exigency to justify the search and seizure of evidence by the police officers. Defendant also contends that even if probable cause existed for the search, the incriminating nature of the powder on the coffee filters was not immediately apparent to the officers.

In support of his argument, Defendant cites *State v. Whorton*, 487 S.W.2d 865, 867 (Mo.1972) and *State v. Hicks*, 515 S.W.2d 518, 521 (Mo.1974), for the proposition that bare suspicion is not enough to permit officers to make a warrantless arrest. Defendant argues that the only fact the officers had to support probable cause was the smell of ether. This fact was not

enough, Defendant contends, to establish probable cause. We do not agree.

"[P]robable cause is a flexible, common-sense concept." *State v. Hampton*, 959 S.W.2d 444, 451 (Mo. banc 1997). There is no precise test to determine whether probable cause existed; rather, the collective knowledge and facts available to all of the officers participating in the arrest determine probable cause. *State v. Witte*, 37 S.W.3d 378, 382 (Mo. App.2001).

As a general rule, warrantless searches and seizures of a home are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). When rented by a person, a hotel room generally carries the same expectation of privacy. *See State v. Mitchell*, 20 S.W.3d 546, 557 (Mo.App. 2000). However, exigent circumstances may justify police officers entering and searching a home without a warrant. *Payton*, 445 U.S. at 589, 100 S.Ct. at 1381. Exigent circumstances exist in cases of emergency, such as when a "delay would endanger life, allow a suspect to escape, or risk the destruction of evidence because of an imminent police presence." *State v. Peters*, 695 S.W.2d 140, 147 (Mo.App.1985); *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 299, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967); *see also State v. Hicks*, 853 S.W.2d 955, 956 (Mo.App.1993); *United States v. Clement*, 854 F.2d 1116, 1119 (8th Cir.1988). The exigent circumstances exception to the warrant requirement for police incursion into a home to make an arrest is narrowly drawn. *See Johnson v. United States*, 333 U.S. 10, 15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948).

Factors considered in determining whether exigent circumstances exist include:

(1) the gravity of the offense, (2) whether the subject is reasonably believed to be armed, (3) whether there is a clear showing of probable cause that the suspect committed the offense, (4) whether the subject is inside the premises to be searched, (5) whether the suspect is likely to escape if not apprehended quickly, and (6) whether the entry is made peaceably.

*State v. Adams,* 51 S.W.3d 94, 99 (Mo.App. 2001); *State v. Varvil,* 686 S.W.2d 507, 512 (Mo.App.1985).

■ During Defendant's trial, officers testified that they had been trained to recognize the smells associated with methamphetamine laboratories, including ether. They were also trained in the inherent dangers of such labs. Such dangers include the risk of explosion due to the flammability of the chemicals used and the effects that ether can have on the respiratory system, such as numbing the senses and even the possibility of loss of consciousness. Officers further testified that they reasonably believed the subject inside could be armed because "[n]ormally with drugs, there's weapons." Neither party cites a Missouri case that addresses the issue of whether the smell of ether solely is an exigent circumstance justifying a warrantless entry. Our independent research has disclosed no such case. However, various state and federal courts have discussed this issue. *See, e.g., State v. Downey,* 53 Wash.App. 543, 768 P.2d 502, 504 (1989)("courts recognize that a high level of ether can justify a warrantless search"). In *People v. Duncan,* 42 Cal.3d 91, 227 Cal.Rptr. 654, 720 P.2d 2 (1986) the supreme court of California explained that:

> [T]he strong smell of ether, equally consistent with criminal and innocent activity, but in either event indicative of possible danger, justifies further investigation by law enforcement officers.

If this further investigation reveals 'an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property or to forestall the imminent escape of a suspect or destruction of evidence,' a warrantless entry, search or arrest may be justified. '[I]n each case the claim of an extraordinary situation must be measured by the facts known to the officers.'

*Id.* at 9 (citations omitted).

In the present case, one of the arresting officers testified that he was trained in the identification of clandestine methamphetamine laboratories. He also testified that he had smelled ether in automotive paint and mechanic shops, and in methamphetamine labs. He also testified that he had previously conducted investigations involving the possible existence of methamphetamine labs in hotel rooms.

Although ether itself is not illegal, because of its flammability a large quantity in a hotel room poses a public safety hazard. This is true regardless of whether the use of the ether is for a legal or illegal purpose. Officers were obliged to investigate the smell. *See Downey,* 768 P.2d at 503. Given the room's proximity to other rooms, the volatility of the chemical, and the possibility of unconscious persons being located in the room, it was reasonable that officers would have investigated the matter without a search warrant. *Id.; Duncan,* 720 P.2d at 9.

■ Defendant's contention that the incriminating nature of the white powder on the coffee filters was not immediately apparent is unpersuasive. One of the officers who conducted the protective sweep testified at trial that he had extensive experience in identifying clandestine methamphetamine labs and that coffee filters are used in processing the drug. The smell of ether, the plastic baggies, and the

white powder on the coffee filters together were indications of illegal activity. *See State v. Norville,* 23 S.W.3d 673, 676–77 (Mo.App.2000). The trial court did not err in overruling Defendant's motion to suppress the coffee filters containing methamphetamine. Point denied.

■ In his second point, Defendant asseverates that the trial court erred in overruling his motion to suppress drug paraphernalia and chemicals found in the hotel room during the search by the narcotics officers, and in admitting those items into evidence at trial over his objection. Defendant maintains that once he was arrested and taken from the scene the search could not be justified as incident to his arrest, and there were no exigent circumstances to justify the search.

■ During the officers' initial sweep, they saw, in plain view, paraphernalia used to make methamphetamine, and a powdery substance which they believed to be methamphetamine. The plain view doctrine allows seizure of evidence, without a search warrant when: (1) the evidence is observed in plain view while the officer is in a place he has a right to be and (2) it is apparent to the officer that he has evidence before him. *State v. Blankenship,* 830 S.W.2d 1, 14 (Mo. banc 1992);[2] *State v. Collins,* 816 S.W.2d 257, 261 (Mo.App. 1991); *State v. Mitchell,* 20 S.W.3d 546, 556 (Mo.App.2000). *See Horton v. California,* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "The doctrine applies where the initial intrusion that brings the officer within plain view of the evidence is authorized by a recognized exception to the warrant requirement, such as the exi-

gent circumstances exception." *Taylor,* 857 S.W.2d at 485.

The officers observed the incriminating evidence during their protective sweep. They did not touch or seize any evidence then; rather, they called the Narcotics Enforcement Team, which was equipped to handle hazardous material. The white powdery substance and coffee filters were observed in plain view by the officers who conducted the protective sweep. Other items, such as the hand held scale, the jars, the marijuana pipe, and the plastic baggies were also found to be sitting out in plain view on the tops of the hotel desk, dresser, and table.

■ The only seized items that were not in plain view were the jar taken from the refrigerator and the rock salt and drain opener removed from a toolbox. Prudence would dictate that the officers should have obtained a search warrant to search for items not in plain view. However, given the particular circumstances of this case, such evidence is not excludable where the prosecution could have proven it would have inevitably been discovered absent the illegal police misconduct. *Weldin v. State,* 973 S.W.2d 107, 112 (Mo.App. 1998); *State v. Butler,* 676 S.W.2d 809, 812 (Mo. banc 1984); *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984); *United States v. Hammons,* 152 F.3d 1025, 1028–29 (8th Cir.1998). Given the strong smell of ether, the actions of Defendant, and the items that officers observed in plain view during a protective sweep of the hotel room, we conclude that there was sufficient probable cause for the officers to have obtained a

**2.** In *Blankenship,* 830 S.W.2d at 14 n. 10, the Missouri Supreme Court followed *Horton v. California, infra,* and eliminated the inadvertent discovery requirement as a necessary component of plain view searches. Consequently, in so far as cases decided by this Court since *Blankenship,* e.g. *State v. Taylor,* 857 S.W.2d 482, 485 (Mo.App.1993), may have required the inadvertence element as a prerequisite to a seizure of evidence without a search warrant, they are no longer to be followed.

search warrant, which would have inevitably resulted in the seizure of the chemicals from the refrigerator and other items found in the tool box. *Butler*, 676 S.W.2d at 813. The trial court did not err in denying Defendant's motion to suppress the evidence. Point denied.

The judgment of the trial court is affirmed.

PREWITT, PARRISH, JJ., SHRUM, P.J., MONTGOMERY, J., GARRISON, P.J., and RAHMEYER, J., concur.