**STATE of Missouri, Respondent,**

v.

**Susan BERRY and Steven Morrison, Appellants.**

Nos. 24807, 24809.

Missouri Court of Appeals, Southern District, Division One.

Jan. 13, 2003.

**826**

Stuart H. King and Sue Chrisman, William H. McDonald & Associates, Springfield, for Appellants.

No brief filed for Respondent.

ROBERT S. BARNEY, Judge.

Appellants, Susan Berry and Steven Morrison, respectively, appeal their convictions in six cases each, of the Class A misdemeanor of animal abuse, proscribed by section 578.012, RSMo 2000, after a bench trial in the Circuit Court of Lawrence County. At trial, the parties entered into a joint stipulation of facts and Appellants reserved their right to appeal the trial court's denial of their respective prior motions to suppress evidence and quash warrants.[1]

■ Appellants have raised four points of trial court error. Points One and Three are dispositive and are reviewed conjunctively.[2] In Point One, Appellants assert that the trial court erred in overruling their respective motions to suppress evidence and quash warrants because on November 30, 2000, law enforcement officials had illegally entered the curtilage of their property without a warrant or the presence of exigent circumstances, and as a result of their illegal search any evidence gathered should have been suppressed. In Point Three, Appellants challenge the affidavit of Lawrence County Deputy Sheriff, Linda Tuck, i.e., the "statement of

---

1. The cases have been consolidated for purposes of this appeal by this Court on its own motion.

2. The state did not file a brief with this court. "While no penalty is prescribed for failure to file a brief, we are required to decide the case without the benefit of that party's authorities and points of view." *State v. White*, 860 S.W.2d 805, 806 n. 2 (Mo.App.1993).

probable cause," supporting the State's request for a search warrant. Appellants maintain, *inter alia*, that the affidavit was insufficient to provide probable cause for the issuance of a search warrant because it was based on information gathered as a result of an illegal search of their property.

The record shows that Appellants lived in a mobile home on approximately eight acres in Lawrence County. The acreage was comprised of two distinct spaces: an approximate 200 by 200 foot area containing the mobile home, a barn, outbuildings, a shed, and a trailer, and open fields beyond this front portion of the property. The mobile home was located a little less than three miles "down [Lawrence County Road] 1225." Access to the mobile home was gained from a gravel driveway that ran along the north side of the mobile home. Immediately behind Appellants' mobile home was a fenced area that contained a barn, outbuildings, a shed, and a trailer, all of which were used by Appellants to house both domestic and exotic animals.

At the end of the driveway was a gate leading to the fenced area that remained closed at all times. Several large dogs were staked out on the other side of the gate, apparently to discourage visitors who were there without permission. Deputy Tuck testified at the motion to suppress hearing that although it was apparent to her that visitors were discouraged, nevertheless, she and Missouri Department of Agriculture inspector Lee Weeks entered the fenced area without a search warrant.

The record further shows that some nine months earlier, on February 17, 2000, these same officers had made a previous search of Appellants properties, pursuant to a lawfully obtained search warrant. During this prior visit in which Dr. Charles Dake, a veterinarian, accompanied the officers, Deputy Tuck testified that she had observed animals tied up and lying in water and mud with nothing to keep them warm. Animals were observed standing in their own manure. She also testified that Appellants were told they needed to provide better shelter for their animals, including making provisions for drier areas to live in. According to Deputy Tuck, Appellants were then given five days to comply with the recommendations. However, no arrests were made and no animals were seized that day.

Significantly, Deputy Tuck testified that she returned five days later and determined that Appellants had in fact complied with the recommendations. No further enforcement action was taken at that time, and Deputy Tuck informed Appellants that the situation would continue to be monitored.

On November 23, 2000, the Humane Society received a citizen's complaint that Appellants' animals were not being cared for properly. At some point, that report was forwarded to Deputy Tuck. One week after the complaint, on November 30, 2000, Deputy Tuck and Mr. Weeks returned to the residence to see if Appellants were still under compliance with the recommendations. The pair made an attempt to contact Appellants, but no one was home.

As they stood in Appellants' driveway, Deputy Tuck could see animals tied up to "piles of junk" in the fenced area. Deputy Tuck testified that although it was apparent to her that visitors were discouraged from freely entering the Appellants' properties, she and Mr. Weeks entered into the fenced area. As previously related, neither official had a search warrant.

After entering the area, Deputy Tuck and Mr. Weeks proceeded to a trailer that they knew from their prior visit had contained dogs. Although the door to the trailer was unlocked, there was some ob-

ject propping it closed. When Deputy Tuck heard dogs barking in the trailer, she opened the door to look in and saw 25 to 30 dogs in crates and tied to short chains inside the trailer.

Deputy Tuck testified at the suppression hearing that she entered the fenced area in the course of conducting her investigation. She testified that she did not enter the trailer where the dogs were crated because she could see everything from the open doorway. Deputy Tuck further testified that although she opened the barn door, only Mr. Weeks entered the barn. The record reveals that after investigating the condition of the animals in the barns and buildings within the fenced area, and in the words of Deputy Tuck, finding animals suffering from neglect, Deputy Tuck left Appellants' residence to obtain a search warrant.

In the affidavit in support of the warrant, Deputy Tuck stated that on November 30, 2000, she and Mr. Weeks went to Appellants' residence to conduct a follow-up investigation of animal neglect. Although Deputy Tuck recited her observations relating to the animals housed in the trailer and barn, she did not reveal that she and Mr. Weeks had in fact physically entered the fenced area of Appellants' property prior thereto in order to make these observations. She further stated in the affidavit that Appellants had been given over nine months to comply with recommendations given to them in February 2000, but that Appellants had failed to comply.[3]

Deputy Tuck filed the application for a search warrant and attached her affidavit. Based upon the affidavit of Deputy Tuck, a search warrant was issued on December 4, 2000. However, it wasn't until December 7, 2000, that the animals were impounded by the authorities.[4]

As previously set out, Appellants contend that the trial court erred when it overruled their motion to suppress evidence and quash warrant because law enforcement officials illegally entered Appellants' curtilage without a warrant and without the presence of exigent circumstances. In particular, Appellants maintain that as a result of this illegal entry, any evidence gathered should have been suppressed since Appellants had a reasonable expectation of privacy in the area immediately surrounding their residence.

"Review of the trial court's denial of Defendant's motion to suppress is based upon the whole record and the totality of the circumstances surrounding its decision and we will affirm the ruling if it is supported by substantial evidence." *State v. Potter*, 72 S.W.3d 307, 313 (Mo. App.2002). " 'Although we review the facts under a clearly erroneous standard, the issue of whether the Fourth Amendment has been violated is a question of law which we review *de novo.*' "[5] *Id.* (quoting *State v. Middleton*, 43 S.W.3d 881, 884 (Mo.App.2001)).

---

**3.** This statement contradicts Deputy Tuck's trial testimony that five days after a prior visit in February 2000, she determined Appellants had been in compliance of the recommendations made by animal welfare officials.

**4.** As best we glean from the record, the animals were released to the custody of Appellants by order of the trial court prior to the suppression hearing.

**5.** The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV.

■ "The Fourth Amendment prohibition against unreasonable searches and seizures inherently acknowledges the sanctity of a person's home and extends protection to the curtilage of the home." *State v. Schweitzer,* 879 S.W.2d 594, 596 (Mo.App. 1994). "The curtilage includes all outbuildings used in connection with the residence, such as garages, sheds, barns, yards, and lots connected with or in the close vicinity of the residence."[6] *State v. Fierge,* 673 S.W.2d 855, 856 (Mo.App.1984).

■ "A search without a warrant is *per se* unreasonable under the Fourth Amendment—subject only to a few well defined exceptions." *State v. Akers,* 723 S.W.2d 9, 13 (Mo.App.1986). The State has the burden to justify a warrantless search and seizure by demonstrating that the search fell within an exception to the warrant requirement. *State v. Tackett,* 12 S.W.3d 332, 337 (Mo.App.2000). Some exceptions to the warrant requirement are: (1) a search incident to a lawful arrest; (2) a seizure of items within plain view; (3) an automobile search based on probable cause; or (4) a protective sweep search for weapons. *Id.* None of these exceptions are present in this case.

■ Additionally, exigent circumstances may justify police officers entering and searching a home or its curtilage without a warrant. *State v. Rowland,* 73 S.W.3d 818, 822 (Mo.App.2002). "Exigent circumstances exist in cases of emergency, such as when a 'delay would endanger life, allow a suspect to escape, or risk the destruction of evidence because of an imminent police presence.'" *Id.* (quoting *State v. Peters,* 695 S.W.2d 140, 147 (Mo.App. 1985)).

In *State v. Roberts,* 957 S.W.2d 449 (Mo. App.1997), the court acknowledged that although Missouri had not addressed the application of an emergency exception to the warrant requirement in cases involving an animal's welfare, courts in other jurisdictions have applied this exception to such situations. *Id.* at 452 n. 2. In *Tuck v. United States,* 477 A.2d 1115, 1121 (D.C.App.1984), the court held that the exigent circumstances exception to the warrant requirement applied to the seizure of a rabbit that was suffering in a closed, unventilated display window when the owner of the store refused to remove it when asked to by police. *Roberts,* 957 S.W.2d at 452 n. 2. "In *State v. Bauer,* 127 Wis.2d 401, 379 N.W.2d 895, 899 (App. 1985), the court, observing that cruelty to animals is a statutory offense and that state policy is to render aid and protection to vulnerable and helpless animals, found that the exigent standard test applies to situations involving the mistreatment of animals."[7] *Roberts,* 957 S.W.2d at 452 n. 2.

■ Here, the record reveals that the fenced area was located approximately 60 to 80 feet behind Appellants' residence, with no open fields separating the residence from the fenced area. As previously set out, Appellants had staked several

---

6. "The United States Supreme Court has defined curtilage utilizing four factors: (1) the proximity of the area claimed to be curtilage to the home; (2) whether the area is within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) steps taken to protect the area from observation by people passing by." *Schweitzer,* 879 S.W.2d at 596.

7. Missouri has a similar public policy against animal abuse as reflected in § 578.012.1(2)-(3), RSMo 2000: A person is guilty of animal abuse when a person:
   (2) Purposely or intentionally causes injury or suffering to an animal; or
   (3) Having ownership or custody of an animal knowingly fails to provide adequate care or adequate control.

large dogs on the other side of the gate to discourage unwanted visitors. The record further reveals that the fenced area included several out-buildings that housed Appellants' animals, and that Appellants used the area on a regular basis. We conclude that Appellants took the necessary steps to demonstrate that they had a reasonable expectation of privacy in the fenced area and the buildings contained therein. The fenced area behind Appellants' residence was curtilage to the residence, and Deputy Tuck and Mr. Weeks should not have entered the area without a search warrant. *See Schweitzer*, 879 S.W.2d at 596.

■ While we acknowledge that exigent circumstances in cases involving animal abuse constitute an exception to the search warrant requirement, under the facts of the instant case, we find no evidence of exigent circumstances. Deputy Tuck went to Appellants' residence on November 30, 2000, one week after a citizen's complaint was made that Appellants' animals were not being cared for properly. Only after entering the fenced area of Appellants' property adjacent to their residence, i.e., the curtilage, and opening the doors of the trailer and the barn to look for signs of animal abuse or neglect did Deputy Tuck then seek to obtain a search warrant. Notably, Deputy Tuck did not obtain a search warrant until December 4, 2000, four days after she had been to Appellants' residence. These actions belie the fact that exigent circumstances existed prerequisite to a warrantless entry into Appellants' properties. If Deputy Tuck believed that a delay in obtaining a warrant would endanger the life of the animals, she certainly would not have waited four days to obtain a warrant that would

have enabled her to seize Appellants' animals and then wait an additional three days before impounding them, as the record shows.

■ Furthermore, since Deputy Tuck and Mr. Weeks were illegally present on Appellants' property, any observations that were made during the illegal visit must be stricken from Deputy Tuck's probable cause affidavit. "[I]f an original search and seizure was improper, evidence obtained as a result of the subsequent search warrant based on the illegal search must be excluded as fruit of the poisonous tree." *State v. Kriley*, 976 S.W.2d 16, 20 (Mo.App.1998).[8]

■ We note, nevertheless, that inclusion in the affidavit of the tainted observations made by Deputy Tuck arising from her unlawful entry does not per se invalidate the warrant. *State v. Mitchell*, 20 S.W.3d 546, 561 (Mo.App.2000). "[E]ven though 'an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue.' " *State v. Macke*, 594 S.W.2d 300, 308 (Mo.App.1980) (quoting *James v. United States*, 418 F.2d 1150, 1151–52 (D.C.Cir.1969)); *United States v. Koonce*, 485 F.2d 374, 379 (8th Cir.1973).

■ "Pursuant to § 542.276.4, probable cause is to be determined from the four corners of the application for the search warrant and any supporting affidavits." *State v. Dowell*, 25 S.W.3d 594, 604 (Mo.App.2000). "The test for determining whether probable cause has been established for the issuance of a search warrant

---

**8.** "Evidence is suppressed pursuant to the 'exclusionary rule,' which is based on the Fourth Amendment." *Kriley*, 976 S.W.2d at 21. The exclusionary rule is a judicially imposed sanction designed to "limit searches and seizures to those conducted in strict compliance with the Fourth Amendment." *Id.*

is the 'totality of the circumstances.'" *Id.* at 604–05 (quoting *State v. Hill*, 854 S.W.2d 814, 817 (Mo.App.1993)). " 'The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Dowell*, 25 S.W.3d at 605 (quoting *Illinois v. Gates*, 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983)).

▌ Therefore, striking the statements based on observations made as a result of the illegal search, the only information that remained in the affidavit is as follows:

1. Deputy Tuck along with Mr. Lee Weeks went to Appellants' residence to conduct a follow-up investigation of animal neglect.

2. Deputy Tuck, Mr. Weeks, Mr. Allen Miller, investigator with Missouri State Humane Society, and Dr. Charles Dake had been to Appellants' residence nine months prior and had found various animals being cared for improperly.

3. Deputy Tuck observed a 1½ acre area on the premises that contained several dilapidated outbuildings being used to house a large variety of animals.

4. Based on the prior report and investigation of Appellants for animal neglect, Deputy Tuck believed there were dogs suffering from neglect on Appellants' property, and that these dogs should be seized by the Sheriffs Department and released to the Missouri State Humane Society for proper care.

5. Deputy Tuck believed that probable cause existed to charge Appellants with animal abuse and neglect on at least 25 dogs and possibly several exotic animals.[9]

▌ Accordingly, limiting ourselves to the untainted information, we conclude that the untainted information contained in the affidavit was insufficient to establish probable cause to justify the issuance of a search warrant. "[T]o justify a denial of Fourth Amendment protection simply because law enforcement believes its criminal investigation would be enhanced by particular investigative conduct, would, as a practical matter, completely abrogate the protection afforded by the amendment." *Kriley*, 976 S.W.2d at 23. Points One and Three are well taken.

The trial court should have granted the respective motions to suppress evidence and quash warrants and should not have considered the evidence seized during the search. In Appeal No. 24807 and Appeal No. 24809 the judgments of conviction and sentence of the trial court are reversed.

MONTGOMERY, P.J., and GARRISON, J., concur.

9. Significantly, no mention is made in the affidavit of the complaint made by a citizen that Appellants' animals were not being cared for properly.