STATE of Missouri, Respondent,

v.

John D. MAHSMAN, Appellant.

No. ED 83724.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 21, 2004.

248

Branson Wood III, Hannibal, MO, for appellant.

Deborah Daniels, Richard Starnes (co-counsel), Jefferson City, MO, for respondent.

## OPINION

GLENN A. NORTON, Presiding Judge.

John Mahsman appeals the judgment entered on his convictions for possessing and manufacturing methamphetamine. We reverse and remand.

## I. BACKGROUND

Before trial, Mahsman sought to suppress methamphetamine, items commonly used to produce methamphetamine and other paraphernalia seized from his home under a search warrant, alleging that the warrant was not based on probable cause. The affidavit supporting the application for the warrant provided that one evening, Mahsman "burst into" his neighbors' home "waving a handgun and yelling to turn off the lights that the world was coming to an end." The affidavit also provided that when the Ralls County sheriff's deputies arrived at Mahsman's home looking for Mahsman, they found the front door open. According to the affidavit, "[d]eputies conducted a sweep of the residence for Mahsman and observed several items of drug paraphernalia and weapons in plain view. Deputies also discovered a jar containing ether on the walkway outside of the Mahsman residence." The affidavit further provided that, soon thereafter, an officer in Marion County stopped Mahsman in his vehicle, arrested him and found he was in possession of methamphetamine, marijuana and drug paraphernalia.[1]

The trial court denied the motion to suppress, and Mahsman was convicted after a jury trial.

## II. DISCUSSION

■■■ Our review of the trial court's decision to deny a motion to suppress is limited to a determination of whether there is substantial evidence to support the decision. State v. Kirby, 128 S.W.3d 619, 621 (Mo.App. E.D.2004). We view the facts and any reasonable inferences therefrom in the light most favorable to the trial court's decision and disregard any contrary evidence and inferences. State v.

1. The trial court granted Mahsman's motion in limine to exclude the items seized during the search incident to arrest. Thus, that evidence was not admitted at trial.

*Lewis,* 17 S.W.3d 168, 170 (Mo.App. E.D. 2000). We will only reverse if the ruling is clearly erroneous. *State v. Milliorn,* 794 S.W.2d 181, 183 (Mo. banc 1990). Nevertheless, we must consider whether the court's decision is a proper application of Fourth Amendment precepts. *State v. Stevens,* 845 S.W.2d 124, 128 (Mo.App. E.D.1993).

██ The Fourth Amendment to the United States Constitution requires that search warrants be based on probable cause and supported by oath or affirmation. Mahsman argues that the information in the affidavit regarding drugs and paraphernalia found during the warrantless search of his home and the search incident to his arrest must be disregarded because those searches were illegal. Information in an affidavit that is based on observations made during an illegal search is tainted and must be disregarded; if the affidavit does not otherwise provide probable cause to support the search warrant, then the evidence seized thereunder must be excluded. *See State v. Macke,* 594 S.W.2d 300, 305 (Mo.App. E.D.1980); *State v. Berry,* 92 S.W.3d 823, 830 (Mo.App. S.D.2003); *State v. Mitchell,* 20 S.W.3d 546, 561 (Mo.App. W.D.2000).

### 1. Warrantless Search of the Home

██ Warrantless searches inside a home are presumptively unreasonable under the Fourth Amendment unless the action falls within certain carefully defined exceptions, many of which are based on the presence of exigent circumstances. *State v. Rutter,* 93 S.W.3d 714, 723 (Mo. banc 2002). Exigent circumstances exist if the time needed to obtain a warrant would endanger life, allow the suspect to escape, or risk destruction of evidence. *State v. Adams,* 51 S.W.3d 94, 99 (Mo.App. E.D. 2001). The following factors are relevant to the determination of whether a particular situation is exigent: (1) the gravity of the offense; (2) a reasonable belief that the suspect is armed; (3) a clear showing of probable cause that the suspect committed the offense; (4) the suspect's presence inside the premises to be searched; (5) the likelihood the suspect will escape; and (6) peaceable entry. *Id.*

At the suppression hearing, the sheriff testified that he went to Mahsman's house to locate him after receiving a call that Mahsman had entered the neighbors' home unannounced, waving a gun around, saying the world was coming to an end and wanting the power shut off. When the sheriff arrived at Mahsman's home, he did not know whether or not Mahsman was armed. The front door was wide open, so the sheriff went up to it and called Mahsman's name several times. When there was no answer, the sheriff went inside. Mahsman was not there, but he saw guns in plain view. He went back outside and, with other officers, searched the perimeter of the house and discovered Mahsman was not there either. At that point, the sheriff—who knew Mahsman and the truck he drove—noticed that the truck was not there. He and the other officers then went back inside Mahsman's home to seize the guns. When they went back in, they found marijuana and paraphernalia in plain view.

██ Assuming that the incident at the neighbors' home was a crime, there were exigent circumstances justifying the sheriff's initial entry into Mahsman's home. It was reasonable to believe, at that point, that Mahsman may have been inside, could have been armed and dangerous to himself or others and would have been able to escape if the sheriff had to wait to obtain a warrant. But by the time the sheriff and other officers went back inside the home, there was no longer an emergency because they knew Mahsman was not there.

The State argues that the first entry into Mahsman's home was a "protective sweep" and that the sheriff had probable cause to believe that the weapons he observed during that sweep were involved in the incident at the neighbors' home, justifying the officers' re-entry into Mahsman's home to seize evidence involved in a crime. We disagree. First, this was not a "protective sweep." A protective sweep is a "quick and limited search of the premises, *incident to the arrest* and conducted to protect the safety of police officers and others." *Maryland v. Buie*, 494 U.S. 325, 327, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (emphasis added); *see also U.S. v. Davis*, 290 F.3d 1239, 1242 n. 4 (10th Cir.2002) (not a "protective sweep" when police enter a home where no one is under arrest and there is not even probable cause to arrest anyone); *U.S. v. Johnson*, 170 F.3d 708, 716 (7th Cir.1999) (limiting "protective sweep" under *Buie* to sweeps conducted pursuant to an arrest for which there was a warrant.) Here, there had not been an arrest at the time the officers searched Mahsman's home. Moreover, even though the first entry into the home was justified under the exigent circumstances exception, there was no evidence that the officers had any reason to suspect that the weapons observed during that search were involved in a crime. In fact, the evidence demonstrates otherwise. The sheriff testified that the officers went back in to seize the guns out of a concern for the safety of Mahsman, the officers and the community. The sheriff knew that the gun involved in the incident at the neighbors' home had been left at the neighbors' home and he had no knowledge or information that any of the weapons in Mahsman's home were involved in any kind of crime.

The information regarding drug paraphernalia observed during the warrantless search of Mahsman's home was illegally obtained, should not have been included in the affidavit and must be disregarded.

**2. Search Incident to Warrantless Arrest**

Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that the suspect has committed an offense. *State v. Clayton*, 995 S.W.2d 468, 477 (Mo. banc 1999). Probable cause is determined by the collective knowledge of and facts available to all of the officers participating in the arrest; the arresting officer need not possess independent knowledge of all of the available information. *Id.* While an officer may rely on information from another officer in developing probable cause, the State must show that the officer who disseminated the information had probable cause to have made the arrest himself. *State v. Kinkead*, 983 S.W.2d 518, 519 (Mo. banc 1998).

The arresting officer in Marion County did not witness any independent facts giving rise to probable cause. He testified at the suppression hearing that he was advised by a Marion County reserve deputy that Mahsman was wanted in Ralls County in connection with an armed criminal action and first degree burglary. The arresting officer did not know whether the deputy was on duty, but testified that the deputy tends to listen to police scanners and pass along information. The arresting officer did not, however, receive any official dispatch from Ralls County.

The State made no attempt to show that the deputy, on whose information the arresting officer relied, had probable cause to arrest Mahsman. The State asserts that the initial source of the dispatch was the Ralls County sheriff who conducted the search of Mahsman's home and that it can be inferred that it was this dispatch on

which the deputy relied in passing along information to the arresting officer. The State claims that the sheriff testified that he had alerted area law enforcement that Mahsman was wanted in connection with a burglary and described his vehicle. This is simply not true. The sheriff testified that, after searching Mahsman's home, he notified area law enforcement agencies that Mahsman may have left in a white truck and requested that the mental health coordinator be contacted to evaluate the need for a temporary commitment. There is no evidence that the sheriff notified anyone that Mahsman was wanted in connection with any crime. Nor is there any evidence that the information the sheriff disseminated was the source of the information the Marion County deputy relayed to the arresting officer. The State has wholly failed to show that this arrest was made on probable cause.

The arrest was illegal, and the information about drugs and paraphernalia obtained during the search incident to that arrest should not have been included in the affidavit and must be disregarded.

### 3. Untainted Information in Affidavit

■■■ While we discount any illegally obtained evidence used in the affidavit, the mere fact that it is included in the affidavit does not invalidate the warrant. *Macke,* 594 S.W.2d at 308. "[O]ur ultimate inquiry is not whether the affidavits contained allegations based upon illegally obtained evidence but whether, if setting aside all tainted allegations, the independent and lawful information stated in the affidavits suffices to show probable cause." *Id.* at 309. Where, as here, the appellate court must excise tainted information from the

affidavit, probable cause is determined without the deference ordinarily given to the issuing judge's decision on an affidavit containing only untainted information. *See Kirby,* 128 S.W.3d at 621 (generally, courts give great deference to initial judicial determination of probable cause and reverse only for clear error); *see also United States v. Bynum,* 125 F.Supp.2d 772, 785 (E.D.Va.2000), *rev'd in part on unrelated ground by U.S. v. Bynum,* 293 F.3d 192 (4th Cir.2002).[2] Our determination depends on whether the totality of the circumstances—as set forth in the four corners of the application for the warrant and supporting affidavit—show that there is a "fair probability that contraband or evidence of a crime will be found." *Kirby,* 128 S.W.3d at 621; *see also State v. Baker,* 103 S.W.3d 711, 720 (Mo. banc 2003). "Common sense is a key ingredient" in evaluating probable cause. *State v. Hawkins,* 58 S.W.3d 12, 21 (Mo.App. E.D.2001).

■■■ Excluding the information concerning drugs and paraphernalia observed during the warrantless searches, the affidavit contains only an account of the incident at the neighbors' home and the fact that weapons and a jar of ether were found at Mahsman's home. This information does not demonstrate a fair probability that drugs would be found in Mahsman's home.

Our courts have often found that, although possession of ether is lawful, in certain circumstances its presence can be incriminating. For instance, the strong smell of ether, when coupled with other evidence, can support a conviction for possessing or manufacturing methamphet-

---

**2.** *See also Macke, Mitchell* and *Berry, supra,* in which the appellate courts—without reference to the standard of review—proceeded to determine probable cause from the face of the

affidavit after excising the tainted information and seemed to reach their conclusions without any deference to the issuing judge's determination.

amine.[3] Likewise, the presence of ether—again, when coupled with other incriminating evidence—can justify a warrantless search under the exigent circumstances exception or provide probable cause to support a search warrant. *See State v. Glisson*, 80 S.W.3d 915, 919 (Mo.App. S.D. 2002) (odor of ether coming from home with windows open in cold weather, plus defendant's behavior when confronted by police amounted to exigent circumstances justifying warrantless search of home); *State v. Meyers*, 992 S.W.2d 246, 248–49 (Mo.App. E.D.1999) (affidavits containing informants' and officers' observation of strong odor of ether, tanks, vehicles at all hours of the night and guard at defendant's home and report that defendant was manufacturing methamphetamine provided probable cause for search warrant); *State v. Norville*, 23 S.W.3d 673, 683 (Mo.App. S.D.2000) (affidavit containing defendant's statement he was going to "cook a batch of dope" and officer's observation of smell of ether and unusually heavy traffic at defendant's home provided probable cause for search warrant). But in each of those cases, the presence of ether was not the only incriminating evidence.[4]

Here, the State contends, possession of ether contemporaneous with possession of weapons supports the search warrant, citing *State v. Dowell*, 25 S.W.3d 594, 603 (Mo.App. W.D.2000). In *Dowell*, the Western District extended the general rule that "evidence of the defendant's contemporaneous possession of other drugs, weapons, money or drug paraphernalia is

---

**3.** *See State v. Wurtzberger*, 40 S.W.3d 893, 896 (Mo. banc 2001) (strong odor of ether or ammonia close to defendant's residence supported inference that defendant knew methamphetamine was being manufactured there; coupled with purchase of starter fluid to aid friend's production of methamphetamine and his relationship with friend, evidence supported conviction for attempt to manufacture methamphetamine); *State v. Farris*, 125 S.W.3d 382, 388 (Mo.App. W.D.2004) (strong smell of ether plus false exculpatory statements and proximity to other material used to produce methamphetamine supported conviction for attempt to manufacture methamphetamine); *State v. Wenzel*, 119 S.W.3d 650, 654 (Mo.App. S.D.2003) (discernable odor of ether plus possession of methamphetamine laboratory, fleeing the scene, appearance of intoxication on methamphetamine and presence of methamphetamine supported conviction for manufacturing methamphetamine); *State v. Tilley*, 104 S.W.3d 814, 823 (Mo.App. S.D. 2003) (possession of ether plus methamphetamine and other items used to manufacture the drug supported conviction for attempt to manufacture methamphetamine); *State v. Booth*, 11 S.W.3d 887, 892 (Mo.App. S.D. 2000) (strong smell of ether plus syringe, small weights used to calibrate amounts of controlled substances and methamphetamine supported conclusion that defendant possessed the drugs found in his truck).

**4.** There is one exception. In *State v. Rowland*, the Southern District concluded that the strong smell of ether outside a hotel room was an exigent circumstance justifying the warrantless search of that room. 73 S.W.3d 818, 823 (Mo.App. S.D.2002). But that conclusion was based on the danger posed by the large quantity of ether that could be presumed from the strong odor:

> Although ether itself is not illegal, because of its flammability a large quantity in a hotel room poses a public safety hazard. This is true regardless of whether the use of the ether is for a legal or illegal purpose. Officers were obligated to investigate the smell. Given the room's proximity to other rooms, the volatility of the chemical, and the possibility of unconscious persons being located in the room, it was reasonable that officers would have investigated the matter without a search warrant.

*Id.* This analysis does not apply to a determination of probable cause to issue a search warrant. Moreover, in this case, the affidavit does not indicate how much ether was found at Mahsman's home and there is nothing about the presence of an undefined quantity of ether that, alone, suggests a fair probability that drugs will also be found in that place.

relevant and admissible to show that the defendant knowingly and intentionally possessed the controlled substance" in drug sale and possession cases to drug manufacturing cases. *Id.* There is nothing, however, in that holding that suggests that possession of weapons and one component commonly used to manufacture methamphetamine provides probable cause to search a person's home for drugs.

The State also argues that we can infer drug use from Mahsman's "bizarre" behavior and that, coupled with the presence of ether and weapons, that behavior provides probable cause to search his home for drugs. Common sense may have supported that inference had we been allowed to consider the drugs or paraphernalia found in Mahsman's home. But odd behavior while in the lawful possession of guns and ether does not, without more, suggest drug use or provide probable cause to support a search warrant for drugs.

The denial of Mahsman's motion to suppress the evidence obtained under this search warrant was clearly erroneous. Point granted.[5]

## III. CONCLUSION

The judgment is reversed, and the case is remanded for disposition consistent with this opinion.

KATHIANNE KNAUP CRANE, J. concurs.

CLIFFORD H. AHRENS, J. dissents in a separate opinion.

[5] While we are unable to determine whether retrial is appropriate from the record before this Court, suppression of this evidence does not preclude retrial if there is other evidence that the State can present to make a submissible case. *See Kinkead,* 983 S.W.2d at 519.

CLIFFORD H. AHRENS, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. While I concur with the majority's holdings regarding the warrantless search of Mahsman's home and the search of Mahsman and his vehicle incident to the warrantless arrest, I disagree with the majority's holding that the untainted information in the affidavit was not sufficient for probable cause to support the search warrant and that the denial of Mahsman's motion to suppress the evidence obtained under this search warrant was clearly erroneous.

Our review of the trial court's ruling on a motion to suppress is limited to determining whether the evidence is sufficient to support the trial court's ruling. *State v. Dowell,* 25 S.W.3d 594, 604 (Mo.App.2000) (quoting *State v. McNaughton,* 924 S.W.2d 517, 522–23 (Mo.App.1996)). The meaning of probable cause is a legal issue, but the existence of probable cause in an individual case is a question of fact. *Dowell,* 25 S.W.3d at 604 (quoting *State v. Berry,* 801 S.W.2d 64, 66 (Mo. banc 1990)). Our review of whether the issuance of a search warrant lacked the required probable cause to render the subsequent search and seizure illegal so as to exclude the evidence at trial is not *de novo.* *Id.* Instead this Court is to give great deference on review to the initial judicial determination regarding probable cause made at the time that the warrant issued, and we reverse only if that determination is clearly erroneous. *Dowell,* 25 S.W.3d at 604 (quoting *State v. Middleton,* 995 S.W.2d 443, 457 (Mo. banc 1999)), *cert. denied,* 528 U.S. 1054, 120

Mahsman's other point on appeal—regarding the admissibility at trial of the neighbors' testimony about the details of the incident at their home—is not dispositive and needs not be addressed. *See id.* at 520.

S.Ct. 598, 145 L.Ed.2d 497 (1999). A determination of probable cause is clearly erroneous only if this Court is left with the firm and definite impression from the record that an error has been made. *Dowell*, 25 S.W.3d at 604 (quoting *State v. Hill*, 854 S.W.2d 814, 816 (Mo.App.1993). This Court will sustain the trial court's ruling if it is plausible in light of the record viewed in its entirety, even if we might have weighed the evidence differently if we had been the trier of fact. *Dowell*, 25 S.W.3d at 604 (quoting *Hill*, 854 S.W.2d at 819)).

Probable cause is to be determined from the four corners of the application for the search warrant and of any supporting affidavits. *Dowell*, 25 S.W.3d at 604. *See* section 542.276 RSMo (2000). To determine whether probable cause has been established for the issuance of a search warrant, we examine the totality of the circumstances. *Dowell*, 25 S.W.3d at 604–05 (quoting *Hill*, 854 S.W.2d at 817). The determination of probable cause to support the issuance of a search warrant depends on the specific facts and circumstance of each case, looking at the probabilities and the factual and practical considerations of everyday life on which reasonable, prudent men act, rather than the considerations of legal technicians. *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527, 544 (1983); *Dowell*, 25 S.W.3d at 605. Accordingly the affidavits supporting search warrants should be interpreted in a common sense manner rather than a hypertechnical one. *See Dowell*, 25 S.W.3d at 605.

Tainted evidence cannot be used to establish the required probable cause for the issuance of a warrant, but the fact that it is included in the affidavit does not invalidate the warrant. *Dowell*, 25 S.W.3d at 606. The proper inquiry is not whether an affidavit contained allegations based upon illegally obtained evidence but whether, after excising all tainted allegations, the independent and lawful information stated in the affidavit is sufficient to establish probable cause. *Id.* (quoting *State v. Macke*, 594 S.W.2d 300, 309 (Mo.App. 1980). "It is not required that the affidavit provide proof beyond a reasonable doubt or by a preponderance of the evidence, the rule being that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Hill*, 854 S.W.2d at 819 (quoting *Illinois v. Gates*, 462 U.S. at 235, 103 S.Ct. at 2330, 76 L.Ed.2d at 546)).

Law enforcement agents are not, generally speaking, lawyers, and do not have to be such. As the U.S. Supreme Court stated in *Illinois v. Gates*, 462 U.S. at 231–32, 103 S.Ct. at 2328–2329, 76 L.Ed.2d at 544, probable cause

[D]oes not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

The U.S. Supreme Court also stated in that case that affidavits are typically drafted by non-lawyers in the midst and haste of a criminal investigation, and that a negative or grudging attitude towards warrants by reviewing courts is inconsistent with the Fourth Amendment's preference for searches by warrant, and that courts should not invalidate warrants by examining and interpreting affidavits in a hypertechnical manner instead of a common-sense manner. *Illinois v. Gates*, 462 U.S. at 233–35, 103 S.Ct. at 2330–2331, 76

L.Ed.2d at 545–47. *See also Hill,* 854 S.W.2d at 818.

I believe that there was sufficient information in the affidavit, even after excising the tainted allegations, to support the issuance of the search warrant. After excising the tainted allegations, the affidavit stated the following: that the affiant was a special agent of the Northeast Missouri Narcotics Task Force with specialized training in narcotics enforcement; that the affiant was familiar with methamphetamine and the items used in its manufacture; that on January 11, 2003 at approximately 10:00 p.m., Mahsman burst into his neighbor's house armed with a gun, yelling at the neighbor to turn off the lights and that the world was coming to an end; that at approximately 10:43 p.m. that same night, the door to Mahsman's house was open; that a jar of ether was on the walkway outside of Mahsman's house when the police arrived; that weapons were found in plain view inside Mahsman's home; and that at 11:03 p.m. that night, a Palmyra police officer conducted a vehicle stop of Mahsman in Palmyra.

The evidence showed Mahsman burst into his neighbor's house late in the evening in the middle of winter, armed with a gun, and yelled at his neighbor to turn the lights off and that the world was coming to an end. This constituted bizarre and irrational behavior at the very least, and supports an inference that Mahsman was intoxicated by some substance. Moreover, Mahsman allegedly left his residence later that same night, leaving the door to his house open, with weapons in plain view in the house, and a jar of ether, which is commonly used in the manufacture of methamphetamine, on the walkway outside his house. When considered in a common-sense manner, the combination of these allegations in the affidavit supported a conclusion by the trial court that there was a reasonable probability of criminal activity. Under our standard of review, looking at the totality of the circumstances, this was sufficient to support the trial court's issuance of the search warrant and to overrule the motion to suppress.

Accordingly, I would affirm the judgment of the trial court.