**STATE of Missouri, Respondent,**

v.

**Mark L. HUNZIKER, Appellant.**

**No. WD 42194.**

Missouri Court of Appeals,
Western District.

July 3, 1990.

Lawrence R. Magee, Kansas City, for appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P.J., and CLARK and BERREY, JJ.

CLARK, Judge.

Mark L. Hunziker was convicted of the offense of leaving the scene of a motor vehicle accident and he was sentenced to a term of five years' imprisonment. He appeals contending in a single point of asserted trial error that the court erroneously admitted evidence seized in violation of appellant's Fourth Amendment right to protection against unreasonable search and seizure of his property and effects.

The evidence submitted to the trial jury in the case supported a finding that on October 5, 1988, appellant had been drinking at bars in Garden City. From early afternoon until 7:30 p.m., appellant's dark-colored Ford Mustang automobile was observed parked outside a bar known as the Friendly Tavern. At approximately 7:00 p.m., appellant was in the Friendly Tavern drinking beer and he was observed by the bartender to be obviously intoxicated. After he left the bar at about 7:30 p.m., appellant was seen leaning against his car and attempting to get his keys from his pocket.

At 7:36 p.m., the Garden City police chief was notified of an accident one-half mile from the Friendly Tavern. Randall Schrock and a companion had been riding skateboards and a dark colored sports car, later identified as appellant's Mustang, had struck Schrock throwing him against the windshield, over the hood and killing him. The car continued on without stopping.

Investigation by the police disclosed the information about appellant's activities during the period in question and the description of his car. The police chief and the county sheriff, in the company of a high-way patrol officer and the coroner, then went to the farm owned by appellant's father and sought out appellant. Attempts to secure a response at the trailer where appellant lived and at the farmhouse occupied by appellant's father were unsuccessful. While on the premises, the officers noticed appellant's Mustang automobile bore indications of a collision. The right front windshield was smashed, the headlights were broken and the antenna was bent. The car was parked in a shed which was open on two sides revealing the interior from the driveway.

Having obtained no response from occupants of the trailer or the house, the officers left, but later returned to renew their efforts to locate appellant. On their return visit, they again had no answer to knocks on the door of the trailer, but appellant's father did appear and reported that his son had left some two hours before, about midnight. One of the deputy sheriffs told appellant's father that they wanted to take the Mustang as evidence in the accident which had killed Schrock and Hunziker gave his permission.

The evidence taken from the Mustang confirmed that it was the vehicle which had struck Schrock. Glass in the victim's clothing matched the glass of the Mustang and wood chips on the car matched the material of Schrock's skateboard. Also, broken glass at the accident scene was the same as the glass from the Mustang's turn signal.

Appellant claims that the evidence obtained as a result of the examination of his automobile should have been suppressed because it was the product of an unlawful search and seizure. He argues that the roadway the officers used to reach his trailer home was a private road, that the shed in which the Mustang was parked was within the protected confines of his dwelling and the car could not have lawfully been seized without a warrant.

It is at once apparent that the first obstacle to appellant's claim is the fact that under the state's evidence, the removal of the automobile was with the permission of Lewis Hunziker, the owner of the property on which the shed, appellant's

trailer and the other farm buildings were located. The evidence established, and appellant does not deny, that the shed was one of a number of structures on the farm jointly accessible to members of the Hunziker family and that Lewis at least had equal authority over and rights of access to the shed in common with appellant. The consent of one who possesses common authority over premises is valid as against the absent, non-consenting person with whom the authority is shared. *State v. Johns*, 679 S.W.2d 253, 262 (Mo. banc 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

Appellant notes that the evidence concerning a grant of permission to take the car came from the deputy sheriff who testified about the conversation. Lewis Hunziker testified that he denied permission and appellant assumes that the latter evidence was controlling. It was, however, a matter of weighing the credibility of the witnesses, the deputy sheriff and Hunziker, and the trial court was under no constraint to believe Hunziker. The testimony of the deputy sheriff constituted substantial evidence of consent and was sufficient to support the court's ruling admitting the evidence. *See id.* at 261.

■ Appellant's brief also questions the efficacy of the consent given to removal of the car on the ground that if Lewis Hunziker did give consent it was extracted from him under threat and duress. There was no evidence from which such a conclusion could be drawn. To the contrary, the evidence supports the conclusion that the consent was voluntary. The officers present displayed no weapons, there was no attempt to mislead Hunziker as to the purpose of their search, there was no threat of arrest and no emphasis upon the officers' authority to induce consent or to proceed without it. To the contrary, the totality of the circumstances indicates a voluntary and cooperative attitude by Lewis Hunziker at the time. *See State v. Blair*, 638 S.W.2d 739, 750 (Mo. banc 1982), for a discussion of factors influencing the determination of whether a consent to search was given voluntarily or was coerced.

■ Even were it to be assumed, however, for purposes of decision in this case, that the need for a warrant to seize the Mustang automobile was not obviated by consent of Lewis Hunziker, the search was not in violation of appellant's Fourth Amendment rights because the zone of protected privacy associated with the trailer home in which he lived did not extend to include the shed where the automobile was located.

The arrangement of the structures of the Hunziker farm was as follows. Access to the main farmhouse occupied by Lewis Hunziker was by a private road extending about one-tenth of a mile from the county road. Appellant's trailer home was the next closest structure to the farmhouse and was about forty feet distant from it. A short distance to the rear and side of the trailer was a large, circular, metal feed bin, along the side of which ran a road or driveway leading to the rear of the property. The shed in which the Mustang car was located was on the opposite side of the driveway from the feed bin, the trailer and the farmhouse. It was also some distance further to the rear of the property. The shed was not in the nature of a residential automobile garage but was used to store farm implements, tractors and machinery. The trailer and the shed were not in a common enclosure.

Appellant contends the shed, and thus the Mustang, were within the curtilage of his residence and thus subject to Fourth Amendment protection. The controlling case on similar facts is *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). There, police officers entered upon residence property one-half mile from the public road and in the hours of darkness, conducted a search without a warrant. The property was completely encircled by a perimeter fence. In addition to a ranch house, there were two barns on the property and a greenhouse. Using a flashlight, the officers looked into the barns in succession and in the second and larger barn, they discovered an illegal phenylacetone laboratory. As a product of this discovery, the officers obtained a warrant and

seized the laboratory equipment and chemicals which were used to convict the defendants. It was claimed on appeal of the convictions that the evidence was the product of an unlawful search because the barn was within the curtilage of the defendant's residence.

The court in *Dunn* examined the curtilage concept and the protection afforded by the Fourth Amendment and concluded that the barn in which the chemical laboratory was located was not within the curtilage of the Dunn residence. The court listed four factors to be considered in deciding curtilage questions: (1) The proximity of the area or structure to the actual residence, (2) Whether the area is included within a common enclosure also containing the home, (3) The nature of the uses to which the area is put, and (4) The steps taken by the resident to protect the area from observation.

Applying the *Dunn* test to the shed in this case, it is apparent that the shed was not included in the curtilage of appellant's trailer residence. The exact distance separating the shed and the trailer was not shown in the evidence except for testimony that it was located "way out from the house." Photographs suggest the distance may have been in the nature of one hundred feet or more. There was no fenced enclosure of the trailer, the main farmhouse or the feed bin and thus the shed and the trailer were not separated from the balance of the property by any common boundary. The use of the shed for various farming purposes indicates the shed was not being used for "intimate activities of the home." Finally, the fact that the shed had no exterior walls on two sides conclusively demonstrates that no effort at all was made to protect the interior and its contents from casual observation.

In the recent case of *State v. Supinski*, 779 S.W.2d 258 (Mo.App.1989), a claim of curtilage invasion without a warrant was also made. There, the contraband was found in a shed located on the property of defendant's residence. Its contents were observed through the open shed door by officers who had come in response to a

report that stolen property might be found. The court in *Supinski* observed that the rule of *Dunn* applies in Missouri and that any area not within the curtilage of the residence may be searched without a warrant under the open fields doctrine. The shed of defendant Supinski was not within the curtilage and was "open fields" for purposes of a warrantless search.

The foregoing authorities demonstrate that the shed containing appellant's Mustang automobile was not within the curtilage of appellant's residence and, no other basis being suggested as to why the officers were precluded from their discovery and seizure of the car, the appellant's claim of error in admitting the evidence in question must fail. This conclusion requires that result even if the seizure was not consensual by the acquiescence of Lewis Hunziker.

The judgment is affirmed.

SHANGLER, P.J., concurs.

BERREY, J., concurs in separate opinion filed.

BERREY, Judge, concurring.

Given the authority of *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987) and *State v. Supinski*, 779 S.W.2d 258 (Mo.App.1989), I reluctantly concur with the majority opinion. While I do not address the technical issues of what defines curtilage and the initial actions of the police on the premises, I am concerned with the erosion of the Fourth Amendment as evidenced by this trend in the law. The warrant requirement is not intended as a mere inconvenience for the police in their gathering of evidence. Instead, it is intended as a protective device for all citizens.

The "open field doctrine" is expressed in *Dunn* and challenged by the dissent. Justice Brennan states, "[o]ur society is not so exclusively urban that it is unable to perceive or unwilling to preserve the expectation of farmers and ranchers that barns and their contents are protected from (literally) unwarranted government intrusion."

*United States v. Dunn, supra,* 480 U.S. at 306, 107 S.Ct. at 1142.

Specially created agencies whose authorities regarding search and seizure are plainly and specifically set forth in statutes can take no comfort in this open field doctrine.

If more than lip service is to be paid to Fourth Amendment principles then a more careful scrutiny should be given to cases, such as this one, where no attempt was made to seek a warrant although nothing appears to have prevented its issuance and where any "exigent circumstances" could have been controlled by the simple device of blocking the road to defendant's property and keeping a careful lookout for signs that evidence was in danger of being destroyed while a warrant was being sought. It is not as if the automobile in question was in danger of being spirited away or flushed down the drain. The better course of action in this case would have been to obtain a search warrant.