

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED103140 |
| | ) | |
| Plaintiff/Respondent | ) | Appeal from the Circuit Court of |
| vs. | ) | St. Francois County |
| | ) | |
| TIMOTHY A. PIERCE, | ) | Hon. Randall L. Head |
| | ) | |
| Defendant/Appellant. | ) | FILED: September 6, 2016 |
| | ) | |

## OPINION

Timothy A. Pierce appeals the trial court's judgment denying his Motion to Suppress. We reverse and remand.

## Background

Appellant Timothy Pierce challenges the legality of a search conducted by two police officers without a warrant on Pierce's property. The search uncovered evidence that led to the conviction of Pierce for various drug offenses. Pierce argues this warrantless search violated his Fourth Amendment right to privacy.

The record reflects Mr. Pierce owns a 3.9-acre rural tract of primarily wooded property near Ringer and Cadet Road in St. Francois County, Missouri. The property is completely enclosed by a barbed wire fence, and there are "private property, no trespassing" signs on each of the two driveways. On the property stands a mobile home in which Mr. Pierce lives, two uninhabited mobile homes, two garage-type buildings, and a chicken coop. The furthest outbuilding, the

1

chicken coop, stands between Pierce's residence and the fence. The distance between the coop and the residence is approximately 75-100 yards. The fence stands another 75-100 yards beyond the coop. At the time of the search, the chicken coop had been devoid of chickens because they were either killed or stolen two or three weeks before.

On June 15, 2011, at around 8:00 p.m., Officers Timothy Harris and Michael Ryan received an anonymous tip regarding the smell of ether in the area of Ringer and Cadet Road. The officers associated the smell with the manufacturing of methamphetamine, and they followed the smell to the rear of Mr. Pierce's property. The officers saw the chicken coop from the fence line and observed a red light between the cracks in the boards. Although the chicken coop was open on one side, the open side was facing the residence, so the officers could not see inside. The red light inside the coop turned white, at which time the officers observed a figure inside the chicken coop.

The officers entered the rear of Pierce's property by climbing over the barbed wire fence and walking to the chicken coop. The officers did not discuss first obtaining a search warrant, and they were aware that Pierce had, on previous occasions, denied requests by police officers to search his property.

The officers found Pierce in the chicken coop and observed materials in the coop commonly used to make methamphetamine. The officers arrested Pierce, secured the property, and acquired a search warrant based on their observations. As a result of that search warrant, additional evidence of the manufacture of methamphetamine was obtained.

Before trial, Pierce filed a Motion to Suppress, claiming that the evidence was obtained as a result of an illegal search and, therefore, should be excluded at trial. After a hearing, the trial court denied the motion, and the trial proceeded before a jury. The jury found Pierce guilty of the drug offenses charged, and the judge sentenced Pierce to a total term of 26 years in prison.

**Standard of Review**

Review of the trial court's denial of a defendant's motion to suppress is based upon the whole record and the totality of the circumstances surrounding its decision. State v. Potter, 72 S.W.3d 307, 313 (Mo. App. S.D. 2002). We will affirm the ruling if it is supported by substantial evidence. Id. Generally, we review the denial of a motion to suppress for clear error, which occurs when "we are left with the definite and firm impression that a mistake has been made." State v. Kriley, 976 S.W.2d 16, 19 (Mo. App. W.D. 1998). We defer to the trial court's factual findings and credibility determinations. State v. Rousan, 961 S.W.2d 831, 845 (Mo. banc 1998). We consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling. State v. Sund, 215 S.W.3d 719, 723 (Mo. 2007). However, whether conduct constitutes a violation of the Fourth Amendment is an issue of law, which we review *de novo.* Id.

**Analysis**

Appellant Pierce argues the warrantless search conducted by the officers was unlawful because it invaded his right to privacy afforded by the Fourth Amendment. He cites State v. Berry, 92 S.W.3d 823, 829 (Mo. App. S.D.2003) and cases from other jurisdictions for the proposition that the chicken coop was within the curtilage of Pierce's property and that he took the steps necessary to demonstrate a reasonable expectation of privacy. Relying on State v. Cady, 425 S.W.3d 234 (Mo. App. S.D. 2014) and United States v. Dunn, 480 U.S. 294, 301, 107 S.Ct. 1134 (1987), the State responds that the coop was not within the curtilage of the home, but rather in an open field, and, therefore, should not be protected from a warrantless search. It further contends exigent circumstances existed to justify the officers' warrantless search due to risks and hazards posed by methamphetamine labs. Under the facts of record and for the reasons stated below, we agree with Appellant Pierce that the coop was within the curtilage of his home and therefore was

protected from a warrantless search. We also agree that no exigent circumstances were present to justify the warrantless search.

The concept of a right to privacy is embodied in the Fourth Amendment. This Amendment reflects the recognition by the Framers that certain enclaves should be free from arbitrary government interference. Oliver v. United States, 466 U.S. 170, 178, 104 S. Ct. 1735, 1741 (1984). Justice Powell, in his opinion, stated:

> Since Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the touchstone of [Fourth] Amendment analysis has been the question whether a person has a "constitutionally protected reasonable expectation of privacy." The Amendment does not protect the merely subjective expectation of privacy, but only those "expectation[s] that society is prepared to recognize as 'reasonable.'"

Id. at 1740-41 (internal citations omitted). The Fourth Amendment's prohibition against unreasonable searches and seizures inherently acknowledges the sanctity of a person's home and extends that protection to the curtilage of the home. State v. Adams, 791 S.W.2d 873, 877 (Mo. App. W.D. 1990). "[T]he 'curtilage' of a person's home is generally defined under Missouri law as the enclosed space of ground and buildings immediately surrounding a dwelling house." State v. Edwards, 36 S.W.3d 22, 26 (Mo. App. W.D. 2000). This "includes all outbuildings used in connection with the residence, such as garages, sheds, barns, yards, and lots connected with or in the close vicinity of the residence." Berry, 92 S.W.3d at 829 (internal quotation marks omitted).

The United States Supreme Court held that courts facing issues regarding curtilage should utilize a four-factor test: (1) the proximity to the home of the area claimed to be curtilage; (2) whether the area is within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) steps taken to protect the area from observation by people passing by. Dunn, 480 U.S. at 301, 107 S.Ct. at 1139–40. Whether or not an area surrounding a dwelling is within

4

the dwelling's curtilage is generally assessed on a case-by-case basis. Edwards, 36 S.W.3d at F.N. 2.

Fourth Amendment protection does not, however, extend to areas known as "open fields." As Justice Holmes in Hester v. United States explained, "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law." 265 U.S. 57, 59, 44 S.Ct. 445, 446 (1924); State v. Hunziker, 799 S.W.2d 610, 613 (Mo.App. W.D. 1990) (acknowledging that the "open fields" doctrine applies in Missouri).

Exigent circumstances may justify police officers entering and searching a home or its curtilage without a warrant. State v. Rowland, 73 S.W.3d 818, 822 (Mo. App. S.D. 2002). "Exigent circumstances exist in cases of emergency, such as when a 'delay would endanger life, allow a suspect to escape, or risk the destruction of evidence because of an imminent police presence.' " Id. (quoting State v. Peters, 695 S.W.2d 140, 147 (Mo. App. W.D. 1985)).

Pierce argues the warrantless search conducted by the officers and the evidence subsequently obtained and used at trial violated his Fourth Amendment right against unreasonable searches and seizures because the chicken coop was within the curtilage of his home. The State in response argues that the chicken coop was not within the curtilage, but rather was located in an open field and not protected under the Fourth Amendment. The State further argues that even if the coop was within the curtilage of the home, exigent circumstances existed sufficient to overcome any Fourth Amendment safeguards provided to property owners. Applying the four-factor analysis employed by courts to determine whether a structure is within the curtilage of the home, we conclude that the chicken coop was within the curtilage of Pierce's home and, therefore, he had a reasonable expectation of privacy with regard to the chicken coop and the contents therein.

The first factor is the proximity of the area claimed to be within the curtilage of the home. It appears undisputed from the record that the coop is located 75-100 yards from Pierce's residence, and the fence stands 75-100 yards beyond the coop. In the context of the rural nature of Mr. Pierce's property, totaling almost 4 acres, 100 yards is not a great distance, particularly with regard to the use of a coop for keeping chickens.

This court held in State v. Fierge that the exact number of yards or feet between the buildings is not, by itself, dispositive of the issue of whether a building is within the curtilage of a home, as setting such a standard for curtilage would be unrealistic. 673 S.W.2d 855, 856–57 (Mo. App. E.D. 1984). Instead, we adopted the standard set forth in United States v. Williams, which held "the outer limits of the curtilage are defined by the walls of the remote outbuildings." 581 F.2d 451, 454 (5th Cir.1978), cert. denied, 440 U.S. 972, 99 S.Ct. 1537 (1979). We held in Fierge that a marijuana patch was not within the curtilage because it was located *behind* the shed, which was the outermost building from the house. The fact that the marijuana patch in Fierge was 180 feet from the house was not dispositive. Similarly, a distance of 75-100 yards is not dispositive on the issue of whether the chicken coop is within the curtilage of Mr. Pierce's home, and we find it reasonable to maintain a chicken coop a similar distance from one's primary residence, particularly on a rural property.

The second factor is whether the area is within an enclosure surrounding the home. The lack of a fence supports a finding that a structure is outside the curtilage of a residence. See, e.g. Cady, 425 S.W.3d at 241; Hunziker, 799 S.W.2d at 613. On the other hand, the presence of a fence indicates a landowner's expectation of privacy. For example, in State v. Berry, two law enforcement officers entered a fenced area without a warrant. 92 S.W.3d at 827. The court held that the fenced area behind the residence was within the curtilage of the home because it was

6

located approximately 60 to 80 yards behind the residence with no open fields separating the residence from the fenced area. Id. at 829. Furthermore, the homeowners visited the buildings within the fenced area on a regular basis. Id. at 829-30. The court concluded the homeowners took the necessary steps to demonstrate that they had a reasonable expectation of privacy in the fenced area and the buildings contained therein. Id. at 830.

Similarly, Mr. Pierce's 3.9-acre property is surrounded by a barbed wire fence, and the coop is located within 100 yards of the residence and is within that fence. Pierce took a number of steps to demonstrate his expectation of privacy, including posting no trespassing signs at two driveways and denying police officers permission to search his residence without a warrant on prior occasions. Although a fence alone is not sufficient to delineate curtilage, it strongly suggests the desire of the property owner for privacy, which the Fourth Amendment is designed to protect. Such a desire was demonstrated here.

The third factor, the nature of the uses to which the area is put, also favors Pierce. Based on the record before us, the coop was being used for intimate activities of the home, i.e. keeping chickens. See Dunn, 480 U.S. at 302. Although the chicken coop was empty at the time of the search, Mr. Pierce testified at trial that the chickens were all killed or stolen just two or three weeks prior the search at issue. The recent use of the coop reflects its use for an intimate domestic purpose.

The final factor, which addresses steps taken by homeowners to protect the area from observation of people passing by, also favors Mr. Pierce. Although the coop was visible from the perimeter fence, it was enclosed on three sides. The open side was only visible from the residence, the contents of the coop hidden from prying eyes that might be present on the perimeter of the property.

7

Although the State relies heavily on <u>Dunn</u> and <u>Cady</u>, we find those cases distinguishable from the circumstances here. In <u>Dunn</u>, the United States Supreme Court held a barn was not in the curtilage because: (1) it was not enclosed by the same fence surrounding the home; (2) the fence enclosing the barn was clearly a cattle fence; and (3) the police officers were able to look inside the barn while standing in an open field. <u>Dunn</u>, 480 U.S. at 302-03. In contrast, here, the coop was enclosed by the same fence surrounding the home and the officers were unable to see the interior of the coop. <u>Cady</u> is equally distinguishable because the shop building at issue was not surrounded by any fence or barrier, the shop building was not used to carry on the intimate activities of the home, and the front door of the shop was visible from the road. 425 S.W.3d at 242.

We therefore conclude the chicken coop was located within the curtilage of the home, and its contents were entitled to Fourth Amendment protections. It is reasonable to expect that the chicken coop, the outermost building on this fenced-in property, was protected from unreasonable search. It was not situated in open fields as argued by the State.

Furthermore, we see no reason to expand any of the exceptions to the warrant requirements based on the record before us, nor does this record present exigent circumstances justifying the police entering and searching the curtilage without a warrant. The State cites the officers' concern that an active methamphetamine lab could endanger life because they are prone to the risk of fire and explosion. However, nothing in the record supports a finding that there was any risk to human life.

In conclusion, applying the four-factor <u>Dunn</u> test, we find that the rights afforded by the Fourth Amendment protected Pierce from a warrantless search of the chicken coop. The officers should have sought to obtain a search warrant *before* climbing the fence and entering the property,

as the smell of ether, coupled with other evidence, can provide probable cause for a search warrant. See, e.g., State v. Meyers, 992 S.W.2d 246 (Mo. App. E.D. 1999).

**Conclusion**

The trial court erred in denying Appellant's Motion to Suppress. It is well settled that under the "exclusionary rule," the fruits of an unlawful search or seizure are inadmissible and cannot be used against a defendant at trial. See State v. Pattie, 42 S.W.3d 825, 827 (Mo. App. E.D. 2001). The evidence described in Appellant's Motion to Suppress was the fruit of an illegal search and, therefore, should have been suppressed. We reverse and vacate Appellant's conviction and sentence, and remand to the trial court for further proceedings consistent with this opinion.

_____
Lisa Van Amburg, Judge


Angela T. Quigless, P.J. and
Robert G. Dowd, Jr., J., concur.

9