

# In the
# Missouri Court of Appeals
# Western District

STATE OF MISSOURI,

                **Respondent,**

v.

LELAND DWAYNE DAGGETT,

                **Appellant.**

**WD81351**

**OPINION FILED:**

**May 28, 2019**

---

**Appeal from the Circuit Court of Henry County, Missouri**
**The Honorable James Kelso Journey, Judge**

**Before Division Two:**
**Thomas N. Chapman, Presiding Judge, Mark D. Pfeiffer, and Cynthia L. Martin, Judges**

*Summary*

Leland Daggett (Daggett) appeals from his convictions, following a trial by jury before the Circuit Court of Henry County, Missouri. Daggett argues that the circuit court erred when it overruled his pretrial motion to suppress evidence, which included methamphetamine, drug paraphernalia, and firearms, seized from a garden in the vicinity of a home. Daggett contends that, while the warrant permitted a search of the home, it did not expressly authorize a search of a nearby garden; and, because the garden was not part of the dwelling's curtilage, the search went beyond the scope of the search warrant. We affirm.

*Facts & Procedure*[1]

In July of 2015, a detective of the St. Clair Sheriff's Department met with a confidential informant who advised him about possible drug activity occurring at 4926 SE 401 Road, Osceola, Missouri. Leland Daggett was known to have been living on the property. On July 15, 2015, the police obtained a warrant to search Daggett's residence.[2] The following day, police officers began surveilling the property at approximately 1:30 p.m. from a wooded area. The surveillance lasted four hours. During this time, officers observed various individuals coming and going from the residence and saw Daggett go to a garden located within 20-30 yards from the home "a few times."

Late in the afternoon, police observed a woman arrive at the premises. Daggett met with her for several minutes, went to his garden, and handed an item to the woman who placed it in her shirt or bra area. The exchange was consistent with a hand-to-hand drug transaction. Shortly thereafter, more police officers arrived to execute the search warrant.

Police made contact with Daggett and searched him. They found a bag in his pocket with the corners cut out of it[3] and a white powdery substance that appeared to be methamphetamine. The police then searched Daggett's garden after the surveillance team advised that Daggett had

---

[1] "In reviewing the trial court's denial of a motion to suppress, we consider the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling." *State v. Gordon*, 551 S.W.3d 678, 682 (Mo. App. W.D. 2018) (quoting *State v. Green*, 469 S.W.3d 881, 883 (Mo. App. E.D. 2015)). "'[T]he facts and inferences therefrom' are viewed 'in the light most favorable to the trial court's ruling,' and we 'disregard all contrary inferences.'" *Id*. (quoting *Green*, 469 S.W.3d at 883).

[2] The Search Warrant, at paragraph 7, provided:
> "**The property which is to be searched and the specific location thereof within St. Clair County, Missouri is as follows**: The residence is described as a double wide trailer house which is blue in color with a front porch and several out buildings. The address for the residence is 4926 SE 401 road, Osceola, which is located in St. Clair County, Missouri. Leland D. Daggett resides at that residence. Also to be searched are any outbuildings located on the property along with any and all persons and vehicles located at the residence, arriving to, or departing the residence during the execution of the search warrant…"

[3] Police officers testified at trial that the corner of a bag can hold 3.5 grams of methamphetamine or an "8-ball," which is a typical amount packaged by distributors.

visited the garden multiple times.  In the west side of the garden among some lower-lying vegetables, police found a black container that was partially buried in a "cubbyhole" and was covered by some loose hay.  Inside the container, they found two digital scales, a spoon, two plastic bags, a playing card, and a large bag with 9.4 grams of crystal methamphetamine.

On the north side of the garden, among some corn plants, the officers spotted a loose pile of dirt that appeared to have recently been disturbed.  They ran a metal detector over the top of the area, which signaled that there was something metal buried beneath.  They unearthed a bucket with a .22 caliber revolver inside of it.  The metal detector signaled again when the officers ran it over a different location in the garden (south of where they had found the black container). There they found a container that was partially submerged in another "cubbyhole" covered by some loose hay.  Inside the container, the officers found a .38 Special revolver.

Daggett was subsequently charged as a prior and persistent drug offender[4] with one count of attempted distribution of a controlled substance (a Class B felony) and two counts of unlawful possession of a firearm (a Class C felony).  Daggett filed a motion to suppress the evidence seized as a result of the search, contending that the search exceeded the scope of the warrant and thus violated his rights under the Fourth Amendment.  The circuit court denied the motion, "find[ing] that the garden in which the contested evidence was found and seized was within the curtilage of the residence."

Daggett was found guilty on all three counts and sentenced to ten years' imprisonment for each conviction to be served concurrently.  He timely appeals.

---

[4] Daggett had previously pled guilty to a felony offense relating to controlled substances in 1988 and another felony offense relating to controlled substances in 1989.

*Discussion*

In his sole point on appeal, Daggett argues that the circuit court erred in denying his motion to suppress the evidence seized from the garden (and the photographs of such evidence) in that the officers' search of the garden was not authorized by the warrant and that the garden was not within the curtilage of the home.

> Review of a trial court's decision to deny a motion to suppress is limited to a determination of whether there is substantial evidence to support the decision….Deference is given to the trial court's factual findings and credibility determinations. The ruling will be reversed only if it is clearly erroneous. The trial court ruling is clearly erroneous if this court is left with a definite and firm belief a mistake has been made. Nevertheless, whether the trial court properly applied Fourth Amendment precepts must be considered.

*State v. Cromer*, 186 S.W.3d 333, 341 (Mo. App. W.D. 2005) (internal citations and quotation marks omitted). "Analysis of whether law enforcement conduct violates the Fourth Amendment is a legal issue that is reviewed *de novo*." *State v. Woodrome*, 407 S.W.3d 702, 706 (Mo. App. W.D. 2013).

The State contends that, although the warrant did not expressly permit the officers to search the garden, the search was nevertheless authorized because the garden was within the curtilage of the home.[5] The United States Supreme Court has defined the curtilage as "the area 'immediately surrounding and associated with the home'" and is regarded as "'part of the home itself for Fourth Amendment purposes.'" *Fla. v. Jardines*, 569 U.S. 1, 6, 133 S. Ct. 1409, 1414, 185 L. Ed. 2d 495 (2013) (quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214). "This area around the home is 'intimately linked to the home, both physically and

---

[5] The State also contends that Daggett did not have a reasonable expectation of privacy with respect to the garden because he presented no evidence that he was the owner or occupier of the land where the evidence was found. Additionally, the State argues that even if a search of the garden was not authorized by the warrant, "the Court should not apply the exclusionary rule, as the officers' conduct in searching the garden in good-faith reliance on the warrant was not 'sufficiently culpable' to justify the substantial costs of the exclusionary rule." In light of our holding that the garden was located within the curtilage of the dwelling, we need not address these arguments.

psychologically,' and is where 'privacy expectations are most heightened.'" *Id.* (quoting

*California v. Ciraolo*, 476 U.S. 207, 213, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986)). Similarly,

Missouri courts define the curtilage "'as the enclosed space of ground and buildings immediately

surrounding a dwelling house.'" *Missouri v. Pierce*, 504 S.W.3d 766, 769 (Mo. App. E.D. 2016)

(quoting *State v. Edwards*, 36 S.W.3d 22, 26 (Mo. App. W.D. 2000)). "This 'includes all

outbuildings used in connection with the residence, such as garages, sheds, barns, yards, and lots

connected with or in the close vicinity of the residence.'" *Id.* at 769-70 (quoting *State v. Berry*,

92 S.W.3d 823, 829 (Mo. App. S.D. 2003)).

"In effect, the curtilage concept creates an extension of the dwelling house. So if the

dwelling is not subject to search, neither is the curtilage. By contrast, if a dwelling is subject to

search, as by a warrant, then the curtilage may also be searched pursuant to the warrant, even if it

is not specifically mentioned in the warrant." *Woodrome*, 407 S.W.3d at 708 (internal citations

omitted). The question before the Court is whether a garden located within 20-30 yards of the

dwelling is within the dwelling's curtilage and, therefore, properly subject to search.

Missouri courts consider four factors when determining whether an area lies within the

curtilage of the home:

> Whether or not an area surrounding a dwelling is within the dwelling's
> "curtilage" is generally assessed on a case-by-case basis, weighing four factors:
> (1) the proximity of the area claimed to be curtilage to the home; (2) whether the
> area is within an enclosure surrounding the home; (3) the nature of the uses to
> which the area is put; and (4) steps taken to protect the area from observation by
> people passing by.

*Edwards*, 36 S.W.3d at 26 n.2.

With regard to the first factor, Missouri appellate courts have expressly declined to

"address the question of how many feet away from a farm house constitutes the curtilage" as

"such a standard would be unrealistic." *State v. Fierge*, 673 S.W.2d 855, 856 (Mo. App. E.D.

1984).  However, in *Missouri v. Pierce*, the Eastern District of this Court held that a chicken coop located within 75-100 yards of the dwelling was within its curtilage.  504 S.W.3d at 770-72.  The Court stated that in light of the "rural nature of [the defendant's] property, totaling almost 4 acres, 100 yards is not a great distance…"  *Id.*  Similarly, Daggett's property was located on acreage within a rural area, and 20-30 yards is a substantially shorter distance than the 75-100 yards distance in *Pierce*.  *Id.*  The close vicinity of the garden to Daggett's home supports the circuit court's finding that the garden was within the curtilage.  *See, e.g., United States v. Breza*, 308 F.3d 430, 436 (4th Cir. 2002) (noting "the fact that the entrance to [the defendant's] garden was only 50 feet from his house would permit a conclusion that the garden was within the curtilage…"); *United States v. Reilly*, 76 F.3d 1271, 1277 (2d Cir.), *aff'd on reh'g*, 91 F.3d 331 (2d Cir. 1996) ("On a large parcel of land, a pond 300 feet away from a dwelling may be as intimately connected to the residence as is the backyard grill of the bloke next door.").[6]

With regard to the second factor, neither the dwelling nor the garden was surrounded by an enclosure.  Nevertheless, there was posted on a utility pole in front of the home a "NO TRESPASSING" sign, which "would ordinarily be understood to assert a privacy interest on the *entire* property."  *State v. Kruse*, 306 S.W.3d 603, 611 (Mo. App. W.D. 2010) (emphasis added); *see also Pierce*, 504 S.W.3d at 771 (finding second factor weighed in favor of curtilage where the defendant "took a number of steps to demonstrate his expectation of privacy, including

---

[6] Additionally, the photographic evidence submitted at trial showed that some of the property was covered in overgrowth, while the lawn surrounding the home and garden was neatly trimmed.  This further supports an inference that the garden was closely connected with the domicile.  *Widgren v. Maple Grove Twp*., 429 F.3d 575, 582 (6th Cir. 2005) (finding that although a disputed "area was not within an enclosure, a clear line marked the mowed portion from the surrounding area that had not been cleared.").  We do note that in *U.S. v. Hayes*, 551 F.3d 138, 148 (2d Cir. 2008), where the warrantless search occurred in an area of unmowed grass very close to the mowed portion of the defendant's backyard, the defendant contended that this suggested the warrantless search occurred in the curtilage of his home (warranting suppression of the evidence seized).  The *Hayes* Court found that whether or not the grass was mowed did not suggest the intended use (the third factor in determining curtilage).  *Id.*  However, we find that the **common** mowing of the lawn and garden in this matter weighs in favor of the ***first*** factor in determining whether the garden was curtilage -- proximity and connectivity to the home.

6

posting no trespassing signs at two driveways...").  Thus, while the absence of an enclosure weighs against the circuit court's finding of curtilage, we believe that it does so only slightly under the particular facts of this case.

The nature of the use (the third factor) also weighs in favor of finding that the garden was within the curtilage of the home.  *See State v. Schweitzer*, 879 S.W.2d 594, 596 (Mo. App. E.D. 1994) (deferring "to the trial court's implied finding that the garden area was within the curtilage of defendant's home, or that the garden was not an open field."); *see also United States v. Cousins*, 455 F.3d 1116, 1122–23 (10th Cir. 2006) ("Gardening is an activity often associated with the curtilage of a home."); *United States v. Breza*, 308 F.3d 430, 436 (4th Cir. 2002) (same) (quoting *State v. Rogers*, 161 Vt. 236, 638 A.2d 569, 573 (Vt. 1993)); *United States v. Jenkins*, 124 F.3d 768, 773 (6th Cir. 1997) (third factor supported a finding that a backyard was within the curtilage where the "[d]efendants used the backyard as an area to garden, planting numerous small trees and flowers.").  In the case at bar, the garden was a vegetable garden estimated to be 15 by 20 yards in size.  It was used for growing corn and some lower-lying vegetables, including tomatoes.  Because gardening is an activity closely associated with domestic life, we find that the area searched by the police was sufficiently connected with the home as to be regarded as an adjunct of the home.  *United States v. Dunn*, 480 U.S. 294, 300, 107 S. Ct. 1134, 1139, 94 L. Ed. 2d 326 (1987) ("[T]he central component of [the curtilage] inquiry [is] whether the area harbors the 'intimate activity associated with the 'sanctity of a man's home and the privacies of life.'") (quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 1742, 80 L. Ed. 2d 214 (1984)).

Turning finally to the fourth factor—the steps taken by the defendant to protect the area from observation by people passing by—we note again that neither the house nor the garden was

enclosed and that Daggett's activities in the garden were observed by officers surveilling from a nearby wooded area. Nevertheless, we also note that the property was marked with a "NO TRESPASSING" sign, which is an assertion of a privacy interest in the whole property and reflects an effort by the occupier to screen the premises from passersby. *Kruse*, 306 S.W.3d at 611; *see also Pierce*, 504 S.W.3d at 771. We also consider the rural area in which the dwelling was situated. In such secluded settings, landowners often do not need to expend significant efforts to protect their property from observation by individuals passing by. *See Jenkins*, 124 F.3d at 773 ("It is also important to remember that defendants live in a remote and sparsely populated rural area where they would have had no particular reason to believe that they needed to construct a high impenetrable fence around the backyard in order to ensure their privacy.").

In sum, of the four factors employed by Missouri courts to determine what constitutes curtilage, only the absence of an enclosure weighs against the circuit court's finding that the garden was located within the curtilage of the home. Therefore, we are not left with a definite and firm belief that the circuit court made a mistake in denying Daggett's motion to suppress. Daggett's sole point is denied.

### Conclusion

Daggett's convictions are affirmed.

/s/*Thomas N. Chapman*

Thomas N. Chapman, Presiding Judge

All concur.

8