

# Missouri Court of Appeals

### Southern District

### Division One

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SD35760 |
| | ) | Filed: February 5, 2020 |
| HERBERT GLEN DAVIDSON, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF MCDONALD COUNTY[1]

Honorable John R. LePage, Judge

**<u>AFFIRMED</u>**

Herbert Glen Davidson ("Davidson") appeals his conviction, following a jury trial, of one count of child molestation in the first degree. Davidson challenges his conviction in three points on appeal. Finding no merit to Davidson's points, we deny the same and affirm the judgment of the trial court.

---

[1] Davidson was originally charged in Newton County, but a change of venue was thereafter granted to McDonald County.

## Facts and Procedural Background

Davidson does not challenge the sufficiency of the evidence to support the conviction. We recite the evidence and the reasonable available inferences therefrom in the light most favorable to the verdict. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc. 2016). We recite other information as necessary for context.

Following Davidson's marriage to Victim's mother in April 2014, Davidson began sexually abusing Victim. Victim was eight years old at the time. Most of the abuse took place in the master bedroom Davidson shared with Victim's mother, with one incident occurring in the master bathroom. Victim and her siblings were not allowed in the master bedroom or bathroom without permission.

Davidson warned Victim that if she told anyone it would not be good for Mother or Victim's brothers. Victim was afraid of Davidson because she had seen him hit her brothers. Davidson "burned" all of the children's toys as punishment for not cleaning their rooms. Victim reported Davidson's abuse of her brothers to her mother, but mother did nothing. There was usually very little food in the home, and Victim and her siblings relied on meals provided at school.

On July 14, 2014, Victim's aunt and uncle observed Victim and her two brothers to be "skinny, really, really skinny" with "sores all over their bodies." They "looked tired." One of the boys had a big knot on his head. The following Monday, a report was made at the "Children's Center in Joplin."

On July 21, 2014, Victim and her brothers were taken into custody by the Children's Division due to allegations of physical abuse of Victim's brothers by Davidson. The children were also found to have scabies. At that time, Victim underwent a CAC interview and was asked about any physical or sexual abuse she may have sustained at the hands of Davidson. Victim feared that

2

she and her brothers might be returned to live with Davidson, and for that reason, Victim denied any abuse.

A Complaint was filed on September 15, 2014, charging Davidson with physical abuse of Victim's brother and half-sister. On September 25, 2014, Davidson turned himself in on these pending charges, but before any allegation of sexual abuse involving Victim had been made.

On October 17, 2014, Davidson sent text messages to Mother stating, "What if they convict me of physical and sexual abuse? Because that's what they're trying to do by saying I showed it to [Victim]. And what's bad is she could probably describe what it looks like as many times as she's ran in our bedroom without knocking when I've gotten out of the shower." "[S]he could give a hair description, size, or anything." Mother reported the text messages to a Children's Division caseworker because she was alarmed by Davidson's text messages. A meeting was set up with Mother, the caseworker, and a law enforcement officer where the text messages were reviewed on Mother's cellphone.

On October 21, 2014, Victim underwent a second CAC interview in which she still did not divulge the sexual abuse by Davidson, due to continuing fear she would be returned home.

In early 2015, Victim and brothers were placed with their aunt and uncle. Victim then disclosed the sexual abuse in a third CAC interview on March 25, 2015.

In her visitation with the children, Mother would confront Victim and her brothers with their allegations and would either blame them, diminish the severity of the abuse, or deny any such abuse took place. Upon the children's request, all visitation and contact with Mother was finally stopped. Mother's parental rights were terminated on May 3, 2016,[2] in large part due to her

---

[2] Mother was still living with Davidson, and neither appeared at the termination of parental rights hearing.

continuing relationship with Davidson, and her continued belief that Davidson did nothing wrong. Thereafter, Victim's aunt and uncle adopted Victim and her two brothers.

On November 30, 2016, Davidson was charged by Information with one count of first-degree child molestation of Victim, pursuant to section 566.067,[3] occurring on or about "Spring 2014 to July 2014."

On January 11, 2017, Davidson filed a motion to dismiss asserting double jeopardy in that he had already been charged and acquitted after a jury trial of child molestation in the first degree against Victim occurring "on or about June 20, 2013." After hearing argument, the trial court took the matter under advisement pending the submission of briefs. The trial court overruled the motion to dismiss on March 22, 2017. On August 14, 2017, Davidson filed a "Petition for Writ of Prohibition" with this Court, which was denied on September 13, 2017.

A jury trial commenced on August 23, 2018.[4] On the morning of the second day of trial, defense counsel tendered an oral motion in limine regarding the testimony of two witnesses as to their knowledge of text messages received by Victim's mother from Davidson and actions taken thereafter. After hearing argument, the trial court overruled the motion, but did restrict the testimony of the two witnesses.

Davidson testified in his own defense and denied inappropriately touching Victim. Davidson admitted he sent the text messages to Victim's mother.

In her testimony, Victim's mother identified photos representing the text messages she had received from Davidson. She also identified Davidson's number as the number she had

---

[3] All references to statutes are to RSMo 2000, unless otherwise indicated.

[4] At the time of trial, Mother and Davidson were still married.

programmed into her cellphone for Davidson and it was the number she associated with him. She recalled receiving the text messages from Davidson sometime after he bonded out of jail.

At the jury instruction conference, defense counsel advised the trial court he had "[n]o objections, no corrections from defense[,]" to any of the tendered jury instructions.

The jury found Davidson guilty as charged. After Davidson waived jury sentencing, the trial court sentenced Davidson to 12 years' imprisonment.

Davidson filed a motion for new trial asserting the trial court erred in allowing the text messages between Davidson and Victim's mother, and not dismissing the case with prejudice based on double jeopardy. After hearing argument, the trial court overruled the motion. This appeal followed.

In three points on appeal, Davidson asserts: (1) the trial court erred in rejecting his double jeopardy argument; (2) the trial court plainly erred in submitting Instruction No. 5—the verdict director for Davidson's charge of child molestation in the first degree—in that evidence was adduced of multiple acts which could each individually serve as the basis for conviction of the crime charged, and Instruction No. 5 did not sufficiently specify between them such as to assure jury unanimity; and (3) the trial court abused its discretion in admitting evidence of text messages Mother received from Davidson, in that the texts were not properly authenticated.[5]

## Principles of Review

"We will uphold the court's ruling on the admissibility of evidence if it is sustainable under any theory." **State v. Townsel**, 564 S.W.3d 731, 736 (Mo.App. S.D. 2018). "The exclusion of evidence is harmless beyond a reasonable doubt where the excluded evidence is cumulative of other evidence which was admitted at trial." **State v. Ellis**, 512 S.W.3d 816, 825 (Mo.App. W.D.

---

[5] Davidson did not file a reply brief. Although such is not required, we are nevertheless deprived of any arguments he might have made in response to the State's brief.

5

2016) (internal quotation and citation omitted).  We review questions of law *de novo*.  ***State v. Daggett***, 575 S.W.3d 799, 802 (Mo.App. W.D. 2019).

## Analysis

### *Point I: Double Jeopardy*

In his first point, Davidson argues that the trial court erred in rejecting his motion to dismiss because Davidson "was previously tried and acquitted of the offense of first degree child molestation in Case No. 15NW-CR00584-01, where he was already put at jeopardy for all incidences of abuse alleged by [Victim] that met the elements of that offense[.]"

We are not persuaded.  While it is said "the time the offense occurred is not a fact necessary to constitute the offense" in sex offense cases—*i.e.*, "that time is not of the essence"[6]—this does not vitiate the principle that (generally) multiple acts of molestation do not cumulatively reflect "a continuing offense, but each act of [molestation] constitutes a distinct and separate offense." ***State v. Jackson***, 410 S.W.3d 204, 216 (Mo.App. W.D. 2013) (internal quotation and citation omitted).[7]

In ***Jackson***, our Western District recently summarized these principles as applicable to double jeopardy:

> The facts of each case will determine whether there has been a single assault or multiple [assaults], including the factors of time, place and defendant's intent. If the defendant has an opportunity to reconsider his actions, each assault separated by time is considered a separate offense.

*Jackson*, 410 S.W.3d at 216 (internal quotations and citations omitted).

---

[6] ***State v. Miller***, 250 S.W.3d 736, 744 (Mo.App. S.D. 2008).

[7] Repeated acts of molestation
> are not to be construed as a roll of thunder, an echo of a single sound rebounding until attenuated. One should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed.  Each act is a further denigration of the victim's integrity and further danger to the victim.

*Vaughan v. State*, 614 S.W.2d 718, 722-23 (Mo.App. W.D. 1981) (internal quotation and citation omitted).

In Case No. 15NW-CR00584-01, Davidson was charged with molesting Victim "on or about the fall of 2013," and acquitted.[8] In the instant matter, Davidson was charged with molesting Victim "on or about Spring of 2014 to July of 2014," and convicted. Based on the controlling principles described in ***Jackson***, an alleged act of child molestation by Davidson against Victim in the fall of 2013 would reflect a separate crime from one committed on or about Spring 2014 to July 2014. The trial court did not err in rejecting Davidson's motion to dismiss on the basis of double jeopardy. Point I is denied.

### *Point II:  Multiple Acts-Instruction No. 5*

In his second point, Davidson argues that the trial court "plainly erred in submitting Instruction No. 5, the verdict director for [] Davidson's charge of child molestation in the first degree," in that "the state presented evidence of multiple actus of [] Davidson touching [Victim]'s genitals or breasts, yet Instruction No. 5 failed to specify any one of these incidents, thereby allowing the possibility that the jurors failed to unanimously find him guilty of the same incident[.]"

The record reflects that Instruction No. 5 was offered by the State, and read as follows:

> If you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about Spring 2014 to July of 2014, in the County of Newton, State of Missouri, the
> defendant touched the genitals or breast of [Victim], and
>
> Second, that the defendant did so for the purpose of arousing defendant's sexual desire,
>
> and
>
> Third, that [Victim] was a child less than fourteen years old,
> then you will find the defendant guilty of child molestation in the first degree.

---

[8] The amended information, the relevant jury instructions, and closing argument from both the State and defense counsel were all in line with this charging range.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

At the jury instruction conference, the trial court asked whether there were "[a]ny objections or corrections?"  Defense counsel responded, "No objections, no corrections from defense."  The State replied, "Nothing from the State, Judge."

In *State v. Celis-Garcia*, 344 S.W.3d 150, 155-56, 158 (Mo. banc 2011), our Supreme Court recognized a defendant's right to a unanimous jury verdict in a multiple acts case—*i.e.*, where "there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count"—such that the jury be instructed that they are required "to agree which of those acts the defendant committed."

It has since been observed that *Celis-Garcia* variety "[c]laims of instructional error are particularly ill-suited for plain error analysis when the decision not to object to the state's instructions may have been motivated by reasonable trial strategy."  *State v. Ess*, 453 S.W.3d 196, 214 n.6 (Mo. banc 2015) (Wilson, J., concurring in part and dissenting in part).  Indeed, our Supreme Court thereafter issued *Hoeber v. State*, 488 S.W.3d 648, 660 (Mo. banc 2016), in which the Court specified that "***In the absence of reasonable trial strategy***, trial counsel's failure to object to the insufficiently specific verdict directors did not conform to the degree of skill, care, and diligence of a reasonably competent attorney."  *Id.* at 660.

> A plain-error claim places a much greater burden on a defendant than an assertion of prejudicial error.  A defendant must show not only that the trial court committed evident, obvious, and clear error, but also the existence of manifest injustice or a miscarriage of justice.  To prove plain instructional error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict.  Even clear and obvious instructional error rarely works a manifest injustice or miscarriage of justice demanding plain-error reversal.  The outcome of plain-error review depends heavily on the facts and circumstances of each case.

*State v. Stuckley*, 573 S.W.3d 766, 768 (Mo.App. S.D. 2019) (internal quotations and citations omitted). "When considered on direct appeal, a trial court does not commit plain error for failing to take action *when the record clearly indicates* that the defendant's counsel strategically allowed that action." *State v. Snyder*, ---S.W.3d---, 2019 WL 6124493, at *4 (Mo.App. S.D. Nov. 19, 2019) (emphasis in original).

In the instant matter, the record indicates that defense counsel joined the State in adducing evidence of the "several acts" of molestation which could individually serve as the basis for criminal conviction.[9] The record reflects that defense counsel did so in a strategic effort to show that Victim's testimony, as a whole, was not credible. As the State points out in its brief:

> If [defense] counsel had objected to the verdict director on jury-unanimity grounds, this might have resulted in the submission of multiple alternative verdict directors to address any jury-unanimity concerns identified in the objection. But making such an objection would have neither furthered nor benefitted [Davidson]'s trial strategy of painting Victim as a liar, nor achieved his goal of obtaining an acquittal. Multiple alternative verdict directors would have simply reminded the jury of the pervasiveness and magnitude of Defendant's sexual abuse. . . . [Davidson]'s goal was not to ensure that the jury unanimously agreed on the same act in finding him guilty; [Davidson]'s strategy was to show that the allegations were fabricated and to obtain an outright acquittal.[10]

Davidson fails to demonstrate that the trial court committed plain error resulting in manifest injustice or miscarriage of justice. Point II is denied.

---

[9] *See State v. Clay*, 533 S.W.3d 710, 717-18 (Mo. banc 2017) ("[T]he trial court does not commit plain error for declining to *sua sponte* exclude evidence when counsel elicits the evidence at issue. . . . The trial court is not obligated to *sua sponte* prohibit objectionable evidence when circumstances indicate trial counsel strategically chose not to object to such evidence.").

[10] Notably, in Davidson's first jury trial, defense counsel also strategically elected not to object to the submission of a verdict director with language substantively identical to that here (with the exception of the charged date range), and Davidson was **acquitted**.

### *Point III: Text Messages*

In his third point, Davidson argues that the trial court abused its discretion in "admitting evidence of text messages [Victim's mother] allegedly received from [] Davidson," because "the texts were not properly authenticated[.]" Specifically, Davidson challenges that "the State only provided evidence that the texts possibly came from a device registered to [] Davidson, but did not provide any specific evidence that [] Davidson actually authored the text messages in question[.]"

As the State points out in its brief, Davidson testified in his case-in-chief that he sent the now-challenged text messages, as to why he sent those text messages, and that there were in fact even more text messages in the conversation that had not been admitted. Because the now-challenged evidence was cumulative to Davidson's own testimony, he "was not prejudiced by its admission, even if erroneous. Improperly-admitted evidence is not prejudicial when essentially the same facts are established by other evidence[.]" ***State v. Newman***, 583 S.W.3d 479, 483 (Mo.App. S.D. 2019). Davidson fails to demonstrate that the trial court abused its discretion in the respect complained of in his Point III, and the same is therefore denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS